GIBSON, DUNN & CRUTCHER LLP
JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
isamplin@gibsondunn.com
ZACHARY C. FREUND, SBN 344466
zfreund@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CONNOR S. SULLIVAN (pro hac vice forthcoming)
cssullivan@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

*Attorneys for Defendants NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, and DANIEL SIVAN*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRA BANKS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, an individual, and DANIEL SIVAN, an individual,<br><br>Defendants. | CASE NO. 2:26-cv-06467-AB-DMK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO EXPEDITE HEARING AND SHORTEN BRIEFING SCHEDULE ON PLAINTIFF'S MOTION TO CONTINUE HEARING DATE AND EXTEND BRIEFING SCHEDULE**<br><br>Date: October 2, 2026<br>Time: 10:00 am<br>Place: Courtroom 7B<br><br>Judge: Hon. André Birotte Jr.<br>Case Filed: June 13, 2026<br>Trial Date: Not Set |

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 5

PROCEDURAL BACKGROUND ..... 7

I. Ex Parte Relief Requires Irreparable Prejudice and an Emergency Not of the Applicant's Making. ..... 9

II. Anti-SLAPP Motions Challenging Legal Sufficiency Are Governed by Rule 12(b)(6), Not Rule 56. ..... 9

ARGUMENT ..... 10

I. Ex Parte Relief Is Not Warranted. ..... 10

A. Banks Will Not Be Irreparably Harmed Without Emergency Relief. ..... 10

B. Any Purported Urgency Was Created by Banks's Own Conduct. ..... 11

II. Banks Does Not Need Discovery to Oppose Defendants' Motion. ..... 12

A. Defendants' Motion Challenges Only the Legal Sufficiency of Banks's Claims. ..... 13

B. None of Banks's Asserted "Factual Issues" Justifies Discovery. ..... 19

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Appel v. Wolf*,
2019 WL 13416838 (S.D. Cal. Jan. 25, 2019) .......... 13, 14, 18

*Baral v. Schnitt*,
376 P.3d 605 (Cal. 2016) .......... 16

*Cochran v. NYP Holdings, Inc.*,
210 F.3d 1036 (9th Cir. 2000) .......... 21

*Colborn v. Netflix, Inc.*,
541 F. Supp. 3d 888 (E.D. Wis. 2021) .......... 20

*Crowe v. Cnty. of San Diego*,
608 F.3d 406 (9th Cir. 2010) .......... 23

*De Havilland v. FX Networks, LLC*,
230 Cal. Rptr. 3d 625 (Ct. App. 2018) .......... 23

*Dodds v. Am. Broad. Co*,
145 F.3d 1053 (9th Cir. 1998) .......... 21

*Espinoza v. City of Imperial*,
2009 WL 10671316 (S.D. Cal. Mar. 4, 2009) .......... 15, 16

*Gaprindashvili v. Netflix, Inc.*,
2022 WL 363537 (C.D. Cal. Jan. 27, 2022) .......... 22

*Gunn v. Drage*,
65 F.4th 1109 (9th Cir. 2023) .......... 17, 18

*Heller v. NBCUniversal, Inc.*,
2016 WL 6583048 (C.D. Cal. June 29, 2016) .......... 21, 22

*Herring Networks, Inc. v. Maddow*,
445 F. Supp. 3d 1042 (S.D. Cal. 2020), *aff'd*, 8 F.4th 1148 (9th Cir. 2021) .......... 14, 16

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) .......... 10, 14, 16

*Kaelin v. Globe Communications Corp.*,
162 F.3d 1036 (9th Cir. 1998) .......... 23

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 17, 21, 22

*Maidman v. Jewish Publications, Inc.*,
355 P.2d 265 (Cal. 1960) .......... 21, 22

*Metabolife International, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) .......... 18

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) .......... 5, 9, 11, 12

*Moser v. Triarc Cos.*,
2007 WL 3026425 (S.D. Cal. Oct. 16, 2007) .......... 16

*Mujica v. AirScan, Inc.*,
771 F.3d 580 (9th Cir. 2014) .......... 21

*Ningbo Yituo Enter. Mgmt. Co. v. GoPlus Corp.*,
2025 WL 1421394 (C.D. Cal. Apr. 10, 2025) .......... 19

*Nunes v. Meredith*,
2022 WL 2214205 (E.D. Cal. June 21, 2022) .......... 15, 17

*Plank v. SAG-AFTRA*,
2025 WL 4036437 (C.D. Cal. Aug. 19, 2025) .......... 9, 10, 11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018) .......... 9, 10, 13, 16, 17

*Prehired, LLC v. Provins*,
2023 WL 2717509 (E.D. Cal. Mar. 30, 2023) .......... 15

*Price v. Stossel*,
620 F.3d 992 (9th Cir. 2010) .......... 21

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
302 F. Supp. 3d 1005 (N.D. Cal. 2017) .......... 15

*Roberts v. McAfee, Inc.*,
660 F.3d 1156 (9th Cir. 2011) .......... 15

*Robles v. Contreras*,
796 F. Supp. 3d 626 (C.D. Cal. 2025) .......... 17, 18

*S.F. Bay Guardian, Inc. v. Superior Court*,
21 Cal. Rptr. 2d 464 (Ct. App. 1993) .......... 22

*Shenzhen Yangjinmaoyi Co. v. Hangzhou Chic Intelligent Tech. Co.*,
2023 WL 4826235 (C.D. Cal. Feb. 21, 2023) .......... 15

*Stillwell v. Fashion Nova, LLC*,
2023 WL 2596823 (9th Cir. Mar. 22, 2023) .......... 10, 13

*Thomas v. L.A. Times Commc'ns, LLC*,
189 F. Supp. 2d 1005 (C.D. Cal. 2002), *aff'd*, 45 F. App'x 801 (9th Cir. 2002) .......... 17, 20

*Troy Grp., Inc. v. Tilson*,
364 F. Supp. 2d 1149 (C.D. Cal. 2005) .......... 17

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows * Doors, LLC*,
2010 WL 3911477 (S.D. Cal. Oct. 4, 2010) ........ 15

*Woulfe v. Universal City Studios LLC*,
2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) ........ 15

*Wynn v. Chanos*,
2015 WL 971360 (N.D. Cal. Mar. 3, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) ........ 13, 15, 18

*Wynn v. Chanos*,
75 F. Supp. 3d 1228 (N.D. Cal. 2014) ........ 20

**Statutes**

Cal. Civ. Proc. Code § 425.16 ........ 8

**Rules**

Fed. R. Civ. P. 12 ........ 5, 8, 10, 11, 13, 14, 15, 16, 18, 19

Fed. R. Civ. P. 56 ........ 11, 13, 16, 19, 18, 12

**INTRODUCTION**

Plaintiff Tyra Banks stipulated to a September 21 deadline to oppose Defendants' Special Motion to Strike and Motion to Dismiss ("Defendants' Motion"), Dkt. 30, on July 1, 2026. *See* Dkt. 27 at 3. On August 11, Banks met and conferred with Defendants and learned, in detail, what Defendants planned to argue, and she picked the hearing date herself. Defendants filed their motion on August 14. Banks then waited six days to demand discovery and waited an additional six days to meet and confer on that demand. She then waited nine more days, until September 4, to file this ex parte application, claiming she needs emergency relief. "Ex parte applications are solely for extraordinary relief." Standing Order for Civil Cases Assigned to Judge Birotte (rev. Mar. 15, 2024), ¶ 17. Banks's application presents no emergency warranting that relief because there is none. Banks will suffer no prejudice if she is required to oppose Defendants' Motion on the schedule to which she stipulated. And the premise of her claimed emergency—that she needs months of discovery before she can respond to Defendants' Motion—is wrong as a matter of law because Defendants' Motion presents only a *legal* challenge to the Complaint, not a factual one. Banks cannot show, as any ex parte applicant must, either that she will be irreparably prejudiced or that there is a "crisis" she is without fault in creating. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Defendants' Motion challenges the legal sufficiency of Banks's claims under the Rule 12(b)(6) standard. Defendants accept Banks's well-pleaded factual allegations as true for the purposes of their motion and rely only on the Complaint and materials properly considered with it, principally the Documentary that Banks alleges defamed her. Defendants do not ask the Court to resolve disputed facts about how the Documentary was made, what its creators actually thought, or how particular viewers actually viewed it. Instead, they ask whether Banks's Complaint, considered together with the Documentary she challenges, plausibly states a claim. It does not.

Consider one of Defendants' principal arguments. Banks alleges that the

Documentary falsely implies she had "forgotten" about contestant Shandi Sullivan's experience on *America's Next Top Model*. Compl. ¶ 205. But the Documentary itself shows Banks answering: "I do remember her story." Dkt. 30 at 14–15. Defendants therefore argue that the Documentary cannot reasonably be understood to imply that Banks forgot Sullivan. *Id.* That is a legal-sufficiency argument based on the publication Banks challenges—not a factual assertion about Defendants' editorial process that requires discovery.

Banks nevertheless tries to turn arguments like this into factual disputes. She takes Defendants' description of the conduct challenged in her Complaint as "ordinary editorial decisions" and calls it an "'actual malice' argument in disguise" that supposedly puts Defendants' subjective state of mind at issue. Dkt. 32 at 5. She takes Defendants' argument about what the Documentary reasonably conveys and recasts it as a factual assertion that Defendants' editing was "fair and accurate." *Id.* And she takes Defendants' reliance on the Documentary as a whole and says it assumes facts about Netflix viewership patterns. *Id.* at 6–7. Defendants made none of those factual arguments. Banks cannot manufacture a right to discovery by recasting Defendants' legal-sufficiency arguments.

The breadth of Banks's discovery demands confirms the point. She seeks months of sweeping merits discovery into virtually every aspect of the Documentary's production: full raw interview footage from an indeterminate number of interviewees; all communications concerning the Documentary or Banks, among other topics; all "draft and final outlines," "editor, director, producer, and story notes," "draft scripts," and draft cuts of the Documentary; deposition testimony of filmmakers, editors, and others involved in producing or reviewing the Documentary; and Netflix's internal viewership data. The scope of these requests bears no resemblance to targeted discovery supposedly needed to answer a particular factual challenge in Defendants' motion. It is broad merits discovery of the sort that should occur only if the Complaint survives the pleadings challenge. It is not discovery "essential" to determining whether Banks's

Complaint states a claim in the first place. Banks's request would effectively skip the pleadings stage, put the litigation on hold for months, and then require Defendants to litigate a summary-judgment motion they never filed—defeating the very point of permitting an anti-SLAPP challenge to legal sufficiency at the pleadings stage, prior to any discovery being taken.

Nor does Banks's disagreement with the nature of Defendants' arguments create an emergency requiring the Court to resolve this issue *ex parte*. Her contention that Defendants' Motion raises factual issues is itself a legal objection Banks can raise *in her opposition* to Defendants' Motion without taking any discovery—just as plaintiffs do every day in opposing motions to dismiss and to strike. She needs no discovery to address the legal-sufficiency arguments Defendants actually made and cannot create an emergency by insisting that she first take discovery to address factual arguments Defendants did not make. She therefore faces no prejudice from adhering to the stipulated schedule, much less the irreparable prejudice required for *ex parte* relief.

The Court should deny Banks's *ex parte* application and leave in place the jointly stipulated schedule for Defendants' Motion.

## PROCEDURAL BACKGROUND

In April 2025, Banks sat for an interview in connection with the documentary series *Reality Check: Inside America's Next Top Model* (the "Documentary"). Dkt. 1 ("Compl.") ¶ 65. On February 16, 2026, the Documentary was released on Netflix. *Id.* ¶¶ 88, 180. On June 13, 2026, Banks initiated this litigation by filing the Complaint. Banks's Complaint alleges two claims for defamation by implication, one for false light, one for breach of contract, and one for false endorsement under Section 43(a) of the Lanham Act. *Id.* ¶¶ 194–271.

On July 1, 2026, the parties filed a joint stipulation setting a briefing schedule for Defendants' anticipated pleadings challenge. The stipulation stated that "Defendants intend to respond to the Complaint by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (the 'Motion to Dismiss') and/or a Special Motion to Strike

pursuant to California Code of Civil Procedure section 425.16 (the 'Special Motion to Strike')." Dkt. 27 at 2. The parties stipulated that Defendants' motion would be due on August 14, 2026, Banks's opposition on September 21, 2026, and Defendants' reply on October 12, 2026. *Id.* at 3.

On August 11, 2026, the parties met and conferred regarding Defendants' anticipated motion. Defendants told Banks that they planned to file a combined Motion to Dismiss and Special Motion to Strike, challenging the legal sufficiency of the Complaint under Federal Rule of Civil Procedure 12(b)(6). Decl. of Zachary C. Freund ("Freund Decl.") ¶ 3. Defendants also identified the specific arguments they intended to make in their motion, which were the same arguments they ultimately made in Defendants' Motion. *Id.* ¶¶ 3, 6. Defendants later sought Banks's input on the hearing date for Defendants' Motion, and Banks indicated a preference for October 30, 2026. *Id.* ¶ 4. At no time during any of these discussions did Banks indicate that she intended to seek a continuance to take discovery before opposing Defendants' Motion, or that the stipulated September 21 opposition deadline was unworkable. *Id.* ¶ 5.

Defendants filed their Special Motion to Strike and Motion to Dismiss on August 14, 2026. Dkt. 30. Defendants' Motion challenges the legal sufficiency of Banks's allegations, arguing that the Documentary "and settled law foreclose Banks's claims as a matter of law." *Id.* at 9. The motion confines itself to the Complaint and materials incorporated by reference, principally the Documentary itself (along with a transcript for ease of reference). *See* Dkt. 30-1, 30-2, 30-3, 30-4, 30-5. Defendants ask the Court to dismiss all of Banks's claims under Federal Rule of Civil Procedure 12(b)(6), and to strike Banks's four state-law claims under California Code of Civil Procedure section 425.16 and award attorneys' fees. *Id.* at 11, 23, 26. Where the motion seeks relief under section 425.16, Defendants expressly ask the Court to apply the Rule 12(b)(6) standard. *Id.* at 12.

On August 20, 2026, Banks sent Defendants a letter demanding broad discovery and a stay of briefing on Defendants' Motion. Dkt. 32-1 at 8. Banks requested a

response by the following Monday, August 24, 2026. *Id.* at 12. Defendants responded by letter on August 24, 2026, as requested. *Id.* at 16–17. In their letter, Defendants explained that because Defendants' Motion challenges only the legal sufficiency of Banks's claims, Banks does not need and is not entitled to obtain discovery prior to filing her opposition brief. *Id.* The parties met and conferred on August 26, 2026. *Id.* at 2. Nine days later, on September 4, 2026, Banks filed her Motion for Continuance, seeking approximately 120 days to conduct discovery before opposing Defendants' Motion. Dkt. 32. She noticed that Motion for October 2 and, later that day, filed an *ex parte* application seeking either an expedited ruling or the underlying continuance relief itself. Dkt. 33.

## LEGAL STANDARD

### I. Ex Parte Relief Requires Irreparable Prejudice and an Emergency Not of the Applicant's Making.

"Ex parte applications are solely for extraordinary relief and are rarely granted." *Plank v. SAG-AFTRA*, 2025 WL 4036437, at *1 (C.D. Cal. Aug. 19, 2025) (citing *Mission Power*, 883 F. Supp. at 490). "Such applications are 'inherently unfair, and they pose a threat to the administration of justice'" and "debilitate the adversary system." *Id.* "Accordingly, ex parte relief is warranted only where the movant shows" both (1) "that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and (2) "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at *1–2 (quoting *Mission Power*, 883 F. Supp. at 492).

### II. Anti-SLAPP Motions Challenging Legal Sufficiency Are Governed by Rule 12(b)(6), Not Rule 56.

"[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). "[O]n the

other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply" and "discovery must be allowed." *Id.* "The defendant determines which motions she files, not the plaintiff," and a plaintiff "cannot convert [a] motion to strike" that challenges only legal sufficiency "into a motion for summary judgment." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). A plaintiff is therefore "not entitled to conduct discovery before the court rule[s]" on an anti-SLAPP motion challenging legal sufficiency. *Stillwell v. Fashion Nova, LLC*, 2023 WL 2596823, at *1 (9th Cir. Mar. 22, 2023).

## ARGUMENT

### I. Ex Parte Relief Is Not Warranted.

Banks cannot satisfy either requirement for *ex parte* relief. She will suffer no prejudice if required to oppose Defendants' Motion on the stipulated schedule. And any urgency is of Banks's own making: she stipulated to the September 21 opposition deadline knowing Defendants might file an anti-SLAPP motion, learned Defendants' specific arguments before the Motion was filed, and then waited three weeks after its filing to seek emergency relief. The Court should deny the application.

#### A. Banks Will Not Be Irreparably Harmed Without Emergency Relief.

Banks cannot show that she will be "irreparably prejudiced" without an accelerated briefing schedule on her Motion for Continuance. *Plank*, 2025 WL 4036437, at *2. Her claimed prejudice is that, absent emergency relief, she must file her opposition to Defendants' Motion on September 21 without first obtaining the discovery she demands. But Banks has no right to—or need for—that discovery before opposing Defendants' Motion. That motion challenges only the legal sufficiency of her claims under Rule 12(b)(6), and none of the discovery Banks seeks is necessary to address those arguments.

Banks's contention that Defendants' Motion raises factual issues is nothing more than an argument she can raise in opposition to the motion, not a reason for discovery.

There is no reason that the Court needs to resolve that question *now*, on an emergency basis, much less to suspend briefing for months while Banks conducts merits discovery. Banks's opposition brief will provide her with a full and fair opportunity to make the very same arguments raised in her Motion for Continuance, and so she will suffer no prejudice by opposing Defendants' Motion on the stipulated schedule.

Banks also argues that Defendants will not be prejudiced by expedited resolution of her Motion for Continuance. Dkt. 33 at 4–5. But that is not the governing standard. Banks must show that *she* will be "irreparably prejudiced" absent *ex parte* relief, *Mission Power*, 883 F. Supp. at 492, and she cannot for the reasons above. Regardless, Banks's requested relief would prejudice Defendants by depriving them of the benefit of the procedural posture they deliberately chose. Defendants brought a pleadings challenge to the legal sufficiency of Banks's claims under Rule 12(b)(6), not a challenge to their factual sufficiency under Rule 56. Permitting Banks to take discovery and introduce evidence before the challenge is decided would forcibly convert Defendants' Rule 12(b)(6) motion into a Rule 56 motion they deliberately did not bring.

**B. Any Purported Urgency Was Created by Banks's Own Conduct.**

Banks also cannot show that she is "without fault in creating" the supposed "crisis" that gave rise to her emergency application. *Plank*, 2025 WL 4036437, at *2. She stipulated in July to a briefing schedule giving her until September 21 to oppose Defendants' anticipated motion. Dkt. 27 at 3. That stipulation expressly contemplated that Defendants might file an anti-SLAPP motion. *Id.* at 2. And during the parties' August 11 meet-and-confer call, Defendants told Banks they would challenge the legal sufficiency of her Complaint under Rule 12(b)(6) and identified the specific legal arguments they intended to make, which matched the actual arguments made. Freund Decl. ¶¶ 3, 6. Defendants later sought Banks's input on the hearing date for Defendants' Motion, and Banks indicated a preference for October 30, 2026. *Id.* ¶ 4. At no time during any of these discussions did Banks ever indicate that the September 21 deadline was unworkable or that she might seek a continuance to take discovery. *Id.* ¶ 5.

Even after Defendants filed their motion on August 14, and Banks could see precisely what it argued and relied upon, she did not promptly seek relief from the Court. She first requested discovery from Defendants on August 20; Defendants rejected that request on August 24; and the parties reached an impasse at their August 26 meet-and-confer. Yet Banks waited another nine days, until September 4, to file her Motion for Continuance and *ex parte* application. By that time, three weeks had already elapsed since Defendants filed their motion. Banks responds that even an earlier regularly noticed motion could not have been heard before September 21. Dkt. 33 at 4. But if Banks truly believed this was an emergency, she could have dispensed with the noticed motion procedure and filed an *ex parte* application days (or even weeks) earlier, leaving the Court with far more time to address it before Banks's opposition deadline. Banks's decision to wait until three weeks after Defendants filed their motion to declare an "emergency" undermines her assertion of urgency, and confirms that Banks is not "without fault in creating" the supposed emergency. *Mission Power*, 883 F. Supp. at 492. Banks's own application confirms there is no urgency. She states that "Defendants have known since August 20, 2026, that Plaintiff would seek this relief," Dkt. 33 at 4, meaning Banks has known at least that long. An "emergency" recognized and sat on for weeks is a crisis of her own making.

Banks cannot manufacture an emergency from the ordinary obligation to oppose a pleadings motion on an agreed schedule. Because she has shown neither irreparable prejudice nor an emergency for which she is without fault, her *ex parte* application should be denied.

## II. Banks Does Not Need Discovery to Oppose Defendants' Motion.

Banks's *ex parte* application asks the Court, as an alternative to expediting her Motion for Continuance, to simply grant the relief sought by that motion: a four-month continuance of the remaining briefing deadlines and hearing date for Defendants' Motion, so that Banks can take discovery before opposing Defendants' Motion. Dkt. 32 at 4; Dkt. 33 at 1. Banks argues that she is entitled to that extraordinary relief under

Federal Rule of Civil Procedure 56(d). She is wrong. Rule 56(d) governs an anti-SLAPP motion only when the defendant challenges the *factual* sufficiency of a claim. Defendants' Motion challenges only the *legal* sufficiency of Banks's claims under Rule 12(b)(6). Banks therefore has no right to discovery before opposing the Motion. And even if Rule 56(d) applied, it would permit discovery only where the nonmovant "cannot present facts *essential to justify [her] opposition*" without it. Fed. R. Civ. P. 56(d) (emphasis added). Banks cannot show that *any* of the discovery she seeks is "essential" to address the legal-sufficiency arguments Defendants actually made.

**A. Defendants' Motion Challenges Only the Legal Sufficiency of Banks's Claims.**

Banks cannot recast Defendants' Motion as a Rule 56 motion. Defendants expressly brought a pleadings challenge under Rule 12(b)(6). Banks is not entitled to rewrite their motion.

As explained above, the defendant chooses whether to challenge legal or factual sufficiency on an anti-SLAPP motion—and if it "challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood*, 890 F.3d at 834. Under those circumstances, the motion "is not a Rule 56 motion for summary judgment, nor should it be treated as such." *Wynn v. Chanos*, 2015 WL 971360, at *2 (N.D. Cal. Mar. 3, 2015), *aff'd*, 685 F. App'x 578, 579 (9th Cir. 2017). And so long as the defendant "has very explicitly and clearly limited his challenge to the legal sufficiency of the pleadings under Rule 12(b)(6)," the plaintiff is not entitled to seek or submit discovery to respond to an anti-SLAPP motion. *Appel v. Wolf*, 2019 WL 13416838, at *5 (S.D. Cal. Jan. 25, 2019); *see also Stillwell*, 2023 WL 2596823, at *1 (plaintiff faced with an anti-SLAPP motion that makes "a challenge to the legal sufficiency" of the complaint is "not entitled to conduct discovery before the court rule[s]" on the motion). As the Ninth Circuit has explained, "*[t]he defendant* determines which motions she files, not the plaintiff," and a plaintiff cannot "convert [a] motion to

strike" brought under Rule 12(b)(6) "into a motion for summary judgment." *Herring Networks, Inc. v. Maddow*, 8 F.4th at 1156 (emphasis added).

In *Herring Networks*, for example, the plaintiff responded to the defendant's anti-SLAPP motion by filing an "ex parte motion" to "supplement the record" with material "not attached to the complaint, relied on by the complaint, or judicially noticeable." *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1047 (S.D. Cal. 2020), *aff'd* 8 F.4th 1148 (9th Cir. 2021). The district court denied that application and held that the defendant's anti-SLAPP "motion must be treated in the same manner as a motion under Rule 12(b)(6)" because it was "based on alleged deficiencies in the plaintiff's complaint." *Id.* (quoting *Planned Parenthood*, 890 F.3d at 834). The Ninth Circuit affirmed, emphasizing that "[t]he defendant determines which motions she files, not the plaintiff." 8 F.4th at 1156. The Ninth Circuit explained that if plaintiffs could "present evidence in defense of all anti-SLAPP motions, then every anti-SLAPP motion would necessarily become a motion for summary judgment," effectively "negat[ing] the purpose of anti-SLAPP motions, which is to remedy the problem of SLAPP suits through 'the prompt exposure, dismissal, and discouragement of [further] suits.'" *Id.* (citation omitted).

Numerous other courts have reached the same conclusion in similar circumstances. In *Appel*, the court denied the plaintiff's "Ex Parte Application to Continue Hearing on the Motion to Strike and to Order Discovery." 2019 WL 13416838, at *1. Because the defendant's anti-SLAPP motion "state[d] that it [was] being brought under Rule 12(b)(6) and s[ought] the application of its standards," and "rel[ied] on the allegations of the Complaint" and material incorporated by reference, the anti-SLAPP motion was "limited" to a "challenge to the legal sufficiency of the pleadings under Rule 12(b)(6)." *Id.* at *2, *5. "[D]iscovery [was] not required" to oppose it. *Id.* at *5.

In *Wynn*, the plaintiff responded to an anti-SLAPP motion by filing a "motion pursuant to Rule 56(d) to postpone [the defendant's] motion on the grounds that more

discovery [was] needed." 2015 WL 971360, at *2. The court found that the defendant's motion was "not a Rule 56 motion for summary judgment, nor should it be treated as such," because the plaintiff's defamation claim "fails as a matter of law and does not turn on any disputed facts," based solely on the "transcript and video" of the challenged publication. *Id.*; *see also Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (affirming grant of anti-SLAPP motion at the pleadings stage, where plaintiff sought "to take discovery[] pursuant to Rule 56(d)" because the evidence sought "was not essential" to his opposition and "would not affect" the court's analysis).

Similarly, in *Nunes v. Meredith*, 2022 WL 2214205, at *1 (E.D. Cal. June 21, 2022), the plaintiff moved to delay the defendant's anti-SLAPP motion while he took discovery. The court held that the defendant's motion should be "review[ed] as a motion to dismiss" under "the Rule 12(b)(6) standard" because the defendant's arguments "focus[ed] on the legal sufficiency of [the plaintiff's] claims as pled in the complaint." *Id.* at *7. Because "a motion to dismiss does not require special discovery," the court held it "need not allow discovery to assess whether [the plaintiff] has sufficiently plead his claims." *Id.*

There are many more examples, in this District and others, of courts recognizing that where a defendant's "motion does not challenge the factual sufficiency of" the plaintiff's claims, but "[r]ather . . . challenges the legal sufficiency of" the plaintiff's allegations, "the Court is not required to deny the motion and permit discovery before making its decision." *Woulfe v. Universal City Studios LLC*, 2022 WL 18216089, at *3 (C.D. Cal. Dec. 20, 2022). A plaintiff cannot obtain or submit discovery to oppose an anti-SLAPP motion that seeks relief only under the Rule 12(b)(6) standard. *See, e.g.*, *Shenzhen Yangjinmaoyi Co. v. Hangzhou Chic Intelligent Tech. Co.*, 2023 WL 4826235, at *10 (C.D. Cal. Feb. 21, 2023); *Prehired, LLC v. Provins*, 2023 WL 2717509, at *4 n.2 (E.D. Cal. Mar. 30, 2023); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1027 (N.D. Cal. 2017); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 2010 WL 3911477, at *1 (S.D. Cal. Oct. 4, 2010); *Espinoza v.*

*City of Imperial*, 2009 WL 10671316, at *13 (S.D. Cal. Mar. 4, 2009); *Moser v. Triarc Cos*, 2007 WL 3026425, at *3 (S.D. Cal. Oct. 16, 2007).[1]

Defendants' Motion seeks relief under the standard of Rule 12(b)(6), not Rule 56. The motion expressly states that "Defendants *challenge the legal sufficiency* of the claims" and asks the Court to "apply 'the standards of *Rule 12(b)(6)*'" in resolving their anti-SLAPP motion to strike Banks's state-law claims. Dkt. 30 at 12 (emphasis added) (citation omitted). Defendants' Motion does not ask the Court to weigh evidence or find that Banks's allegations were *factually* unsupported. Defendants submitted no extrinsic factual evidence in support of their motion. The only materials submitted with their motion were a declaration attaching the video and transcript of the Documentary itself. Dkt. 30-1. As in any defamation action, it is "appropriate to incorporate by reference" because it is "referred to extensively in the complaint." *Herring Networks*, 445 F. Supp. 3d at 1048.

Well-settled precedent indisputably establishes that all of Defendants' arguments for striking and dismissing Banks's defamation claims[2] are *legal* arguments that can be resolved *as a matter of law*. Defendants argue that Banks's non-conclusory allegations, taken together with the Documentary, do not plausibly allege "that the Documentary itself, viewed as a whole by a reasonable viewer, actually communicates the defamatory implications she alleges." Dkt. 30 at 13. "It is for the court to decide whether a statement

[1] Plaintiff cites the California Supreme Court's decision in *Baral v. Schnitt*, 376 P.3d 605, 608–09 (Cal. 2016), which discusses how California state courts apply the anti-SLAPP statute. Dkt. 32 at 4. To avoid any doubt, California state procedure does not determine what standard governs motions filed in federal court. As the Ninth Circuit has explained, a defendant filing an anti-SLAPP motion in federal court either invokes the Rule 12(b)(6) standard, for legal challenges, or the Rule 56 standard, for factual challenges. *Planned Parenthood*, 890 F.3d at 834. And it is up to the defendant what kind of arguments they make, not the plaintiff. *Herring Networks*, 8 F.4th at 1156. Because Defendants seek relief only under the standard of Federal Rule 12(b)(6), the Court does not need to—and should not—consider at this time whether Banks's claims are "factually substantiated." *See* Dkt. 32 at 4.

[2] Banks appears to only seek discovery related to her defamation claims and Defendants' arguments for dismissing those claims. *See* Dkt. 32. She identifies no argument for striking or dismissing any other claim that purportedly justifies discovery.

is actionable defamation in the first instance as a matter of law." *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) (citation omitted). Defendants also argue that certain challenged statements are nonactionable opinion on the face of the Documentary itself. Dkt. 30 at 18-19. "[W]hether a communication is a factual assertion or a protected opinion" is also "'a question of law to be decided by the court.'" *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1158 (C.D. Cal. 2005) (citation omitted). Finally, Defendants argue that Banks failed to plausibly allege that Defendants intended to defame her. Dkt. 30 at 15, 18–19. That issue may be resolved as a matter of law where the plaintiff's non-conclusory allegations, taken together with the challenged publication, fail to state a plausible claim that a "reasonable juror could find that Defendants intended to convey [the alleged] impression." *Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002) (granting anti-SLAPP motion to strike defamation claim at the pleadings stage), *aff'd*, 45 F. App'x 801, 802 (9th Cir. 2002).

As in the numerous cases cited above, Defendants' arguments "focused on the legal sufficiency of [the plaintiff's] claims as pled in the complaint." *Nunes*, 2022 WL 2214205, at *7. The Court therefore should "appl[y] a Rule 12(b)(6) standard" and "declin[e] to evaluate the factual sufficiency of the complaint at the pleading stage," *Planned Parenthood*, 890 F.3d at 835, just as it would on any other pleadings motion. And just as "a motion to dismiss does not require special discovery," the Court should "not allow discovery" here either "to assess whether [the plaintiff] has sufficiently plead [her] claims." *Nunes*, 2022 WL 2214205, at *7.

In the face of this heavy weight of authority, Banks cites just two cases purportedly going her way: *Gunn v. Drage*, 65 F.4th 1109 (9th Cir. 2023), and *Robles v. Contreras*, 796 F. Supp. 3d 626 (C.D. Cal. 2025). Both are readily distinguishable, because the anti-SLAPP motions in question there were *expressly* factual—they relied on extrinsic evidence and attacked the plaintiff's lack of support. In *Gunn*, the defendant "explicitly framed her challenge as a factual one" and "submitted a significant amount

of extrinsic evidence, including declarations, emails, and filings from other court cases." 65 F.4th at 1116. The Ninth Circuit concluded that the district court "was . . . entitled to consider evidence" because of the defendant's "reliance on extrinsic evidence at both steps" of the anti-SLAPP framework. *Id.* at 1120. In *Robles*, the defendant likewise "relie[d] on extrinsic evidence" at "both prongs of the anti-SLAPP analysis," including "facts derived from statements made in [the defendant's] declaration." 796 F. Supp. 3d at 631. Because the defendant had expressly "rais[ed] the insufficiency of facts in support of Plaintiffs' claims, not just the mere insufficiency of their pleading," she "obligate[d] Plaintiffs to respond with contrary evidence." *Id.* at 632.[3]

Those cases have no bearing here, because Defendants did not bring a factual challenge to Banks's Complaint or submit and rely on extrinsic evidence, such as emails and declarations. To the contrary, Defendants "explicitly and clearly limited [their] challenge to the legal sufficiency of the pleadings under Rule 12(b)(6)," and thus "discovery is not required." *Appel*, 2019 WL 13416838, at *5. Because Defendants did *not* take discovery, submit extrinsic evidence, or challenge the factual sufficiency of Banks's claims, they would be prejudiced by a ruling converting their pleadings motion into a Rule 56 motion and allowing Banks to seek discovery and introduce evidence to oppose it.[4]

---

[3] Nor can Banks rely on *Metabolife International, Inc. v. Wornick*, 264 F.3d 832, 838, 846–48 (9th Cir. 2001), where the Ninth Circuit authorized a plaintiff to take discovery because the issues raised by the anti-SLAPP motion turned on whether the plaintiff could demonstrate *factual* support. Courts have since held that where "a claim fails as a matter of law and does not turn on any disputed facts," an argument for discovery to oppose an anti-SLAPP motion "based upon *Metabolife* . . . is inapposite." *Wynn*, 2015 WL 971360, at *2.

[4] Banks's proposed procedure would also be fundamentally one-sided. Defendants deliberately brought a Rule 12(b)(6) challenge and therefore had neither reason nor occasion to submit the evidence they would have submitted had they chosen to challenge the factual sufficiency of Banks's claims under Rule 56. Banks cannot convert Defendants' Motion into one governed by Rule 56, take discovery to build her own evidentiary record, and then use that record to oppose a Motion Defendants deliberately presented on the pleadings.

To avoid any doubt, Defendants expressly disclaim any challenge to the factual sufficiency of Plaintiff's allegations and ask the Court to consider only whether Plaintiff's non-conclusory allegations, considered in the context of the Documentary, plausibly state a claim for relief under Rule 12(b)(6). "[T]he Court can rule on the Anti-SLAPP Motion without discovery because" it raises only "purely legal question[s], and no amount of discovery would save [Banks's] claim." *Ningbo Yituo Enter. Mgmt. Co. v. GoPlus Corp.*, 2025 WL 1421394, at *5 (C.D. Cal. Apr. 10, 2025).

**B. None of Banks's Asserted "Factual Issues" Justifies Discovery.**

Banks argues that Defendants' Motion "raises several issues that are factual and can be tested only with discovery." Dkt. 32 at 5. But her arguments mischaracterize both Defendants' Motion and the law. None of the issues Banks identifies will require the Court to make factual findings to rule on Defendants' Motion. Banks simply tries to recast the legal-sufficiency arguments Defendants actually made into factual challenges they did not. Nor are any of these issues "*essential* to justify [Banks's] opposition," as required under Federal Rule 56(d) (emphasis added). *See* Fed. R. Civ. P. 56(d) (emphasis added).

First, Banks is wrong that Defendants' reference to "ordinary editorial decisions" was an "'actual malice' argument in disguise." Dkt. 32 at 5. That phrase described the conduct *Banks herself challenges* in the Complaint—her allegations that she should have received "advance notice of what another interviewee would say," that "more of her interview" should have been included in the Documentary, and that her "perspective" should have been "presented differently." Dkt. 30 at 7. It was not an argument about Defendants' state of mind, much less an assertion that evidence outside the pleadings establishes that Defendants lacked actual malice. Defendants do not ask the Court to "take Defendants' word for what they thought when they edited" the Documentary, Dkt. 32 at 5, or otherwise ask the Court to determine what Defendants actually knew or believed. Banks therefore needs no "state of mind evidence" to respond to an argument Defendants did not make. *Id.*

Second, Banks incorrectly asserts that Defendants' Motion asks the Court to "presume[] . . . that Defendants' presentation of Ms. Banks' and the contestant's interviews was fair and accurate." Dkt. 32 at 5. It does not. Defendants do not ask the Court to determine whether the Documentary was "fair or accurate"; they argue that Banks's allegations, taken together with the Documentary she challenges, do not plausibly allege that the Documentary reasonably conveys the defamatory implication Banks purports to identify. Whether unused footage might have permitted a different presentation is irrelevant to that legal-sufficiency argument.[5]

Third, Banks does not need discovery to address Defendants' argument that she has failed to plausibly allege defamatory intent. *See* Dkt. 32 at 5–6. Defendants do not rely on evidence of their actual state of mind. Instead, they argue that Banks's allegations, considered together with the Documentary, do not plausibly establish that Defendants "intended to disparage Banks." Dkt. 30 at 19. Courts resolve that question at the pleadings stage based on the challenged publication. *See, e.g.*, *Thomas*, 189 F. Supp. 2d at 1013 (granting motion to dismiss defamation claim where "[n]o reasonable juror could find that Defendants intended to convey" the alleged defamatory implication), *aff'd*, 45 F. App'x at 802 (affirming dismissal of defamation claim on the pleadings where plaintiff "does not show that he has a probability of establishing that the author intended such defamatory implications"); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1237 (N.D. Cal. 2014) (granting motion to dismiss where a reasonable listener "could not find" defendant "intended to convey" the alleged defamatory statement based on defendant's "language"). In other words, Banks cannot use discovery into Defendants' subjective state of mind to supply an element her allegations must plausibly

---

[5] Banks cites a decision from a Wisconsin federal district court addressing a different argument made against different allegations, which found that the arguments made there were factual ones. Dkt. 32 at 5 (citing *Colborn v. Netflix, Inc.*, 541 F. Supp. 3d 888, 901 (E.D. Wis. 2021)). That decision is irrelevant here: Defendants did not argue that some extrinsic evidence not before the court would prove that the Documentary was accurate; they argued Banks's own non-conclusory allegations, taken together with the Documentary, do not plausibly allege that the Documentary communicates a defamatory meaning.

establish before discovery. *See Mujica v. AirScan, Inc.*, 771 F.3d 580, 592 (9th Cir. 2014) ("Plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it."). In any event, the Court only needs to reach intent if Banks first clears the threshold legal question addressed below: whether the Documentary is reasonably capable of conveying the defamatory implication she alleges at all.

Fourth, Banks incorrectly asserts that whether a "'reasonable viewer'" could understand the Documentary to convey the defamatory implication she alleges is a "factual question." Dkt. 32 at 6 (citation omitted). It is not. That categorically misstates the law. As Defendants explain in their motion, the threshold question in a defamation-by-implication claim is whether the challenged publication can "reasonably be understood as implying the alleged defamatory content." Dkt. 30 at 13 (quoting *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010)). That "dispositive question in a defamation action . . . is a question of law for the court," *Heller v. NBCUniversal, Inc.*, 2016 WL 6583048, at *4 (C.D. Cal. June 29, 2016)—not, as Banks wrongly contends, a fact issue for the jury. If Banks were correct, *every* defamation plaintiff would be entitled to discovery to explore whether the challenged publication could reasonably be interpreted in a defamatory way. But the law is the opposite: a defamation plaintiff's claim must be dismissed on the pleadings if the court finds that there is no reasonable defamatory interpretation of the statements she challenges. *Knievel*, 393 F.3d at 1074; *see also Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000); *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998); *Heller*, 2016 WL 6583048, at *4.

Banks's reliance on *Maidman v. Jewish Publications, Inc.*, 355 P.2d 265 (Cal. 1960) conflates that threshold legal question with a distinct factual inquiry that arises only if she clears it. Banks quotes *Maidman* for the proposition that it is ultimately for the factfinder to determine whether "readers did so understand" the publication in a defamatory way. Dkt. 32 at 6 (quoting *Maidman*, 355 P.2d at 269. But *Maidman* itself makes clear that factual inquiry arises only *after* the court determines that the publication "*could reasonably have been understood to make such a charge*." *Maidman*, 355 P.2d

at 269 (emphasis added). Defendants' Motion challenges Banks's claims at that antecedent legal step—which is a question reserved "for the court . . . as a matter of law." *Knievel*, 393 F.3d at 1074; *see also Heller*, 2016 WL 6583048, at *4. No discovery is necessary to decide it.

Moreover, none of the discovery Banks seeks has any bearing on "how viewers actually understood the Netflix Series." Dkt. 32 at 6. She seeks discovery from Defendants—including Netflix viewership data—not discovery into viewers' reactions to the Documentary. *See id.* at 8–10. And in any case, actual viewers' subjective impressions are irrelevant as a matter of law to the threshold question of whether a *reasonable viewer* could understand the Documentary as Banks alleges. *See S.F. Bay Guardian, Inc. v. Superior Court*, 21 Cal. Rptr. 2d 464, 467 (Ct. App. 1993) ("the view of the average reader . . . is not . . . to be answered by taking a poll of readers," and evidence of viewers' subjective reactions "does not raise a question of fact"). *Gaprindashvili v. Netflix, Inc.*, 2022 WL 363537 (C.D. Cal. Jan. 27, 2022), which Banks cites, does not suggest otherwise. There, the court considered viewers' responses to the challenged television series in assessing whether the plaintiff had adequately alleged reputational damage, not to answer the threshold legal question of whether the work was reasonably capable of conveying a defamatory meaning. *Id.*, at *7. And those viewer reactions that the court considered were alleged in the complaint, not obtained through discovery. *Id*. *Gaprindashvili* therefore provides no basis for discovery here.

Fifth, Banks similarly mischaracterizes Defendants' argument that the Documentary should be evaluated as a whole by claiming it depends on factual assumptions about how viewers watched the Documentary. Dkt. 32 at 6–7. Banks herself refers to the documentary series as a single unit, alleges the documentary in its entirety "premiered on Netflix on February 16, 2026," and alleges that the "final product consisted of three episodes—165 minutes in total." Compl. ¶ 88. Those allegations concede that the Documentary is a single work to be evaluated as a whole. In any case, Defendants' argument does not assume anything about how viewers watched the

Documentary. Their argument is a legal one: defamatory meaning is assessed from the challenged "publication as a whole," rather than from "snippets taken out of context." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 443 (9th Cir. 2010) (citation omitted). And where a defamation plaintiff challenges a multi-episode series, courts evaluate all the episodes to assess the series "in its entirety." *See De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 643 (Ct. App. 2018). Netflix data showing when—or whether—particular viewers proceeded from one episode to the next cannot alter that legal rule.

*Kaelin v. Globe Communications Corp.*, 162 F.3d 1036 (9th Cir. 1998), does not support Banks's contrary position. There, the Ninth Circuit considered whether an article on page 17 of a newspaper was "too far removed" from a front-page headline to "clear[] up any false and defamatory meaning that could be found on the cover." *Id*. at 1041. The *Kaelin* court evaluated that question by examining the challenged publication itself—including the placement of the disclaimer relative to the headline—not by examining evidence about how particular readers actually consumed it. *Id.* Banks may argue (contrary to well-established law) that the Documentary should be evaluated episode by episode rather than as a whole. But that is a legal question about how the Court should evaluate the challenged work; Netflix viewership data is irrelevant to it.

None of these purported "factual issues" requires discovery. And none of the sweeping discovery Banks demands is "essential" to oppose Defendants' challenge to the legal sufficiency of her non-conclusory allegations, considered together with the Documentary itself. *See* Fed. R. Civ. P. 56(d). Banks cannot create a right to take discovery—or delay this case for months—by mischaracterizing the *legal* arguments Defendants actually made as factual challenges they did not make.

**CONCLUSION**

The Court should deny Banks's *ex parte* application and decline to continue the schedule on Defendants' pending Special Motion to Strike and Motion to Dismiss.

Dated: September 9, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jay P. Srinivasan*
JAY P. SRINIVASAN

Attorneys for Defendants *NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, and DANIEL SIVAN*

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,810 words, which complies with the word limit of L.R. 11-6.1, and is 19 pages, in compliance with this Court's Standing Order ¶ 12(c).

Dated: September 9, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jay P. Srinivasan*
JAY P. SRINIVASAN

Attorneys for Defendants *NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, and DANIEL SIVAN*