GIBSON, DUNN & CRUTCHER LLP
JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
isamplin@gibsondunn.com
ZACHARY C. FREUND, SBN 344466
zfreund@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

CONNOR S. SULLIVAN (pro hac vice forthcoming)
cssullivan@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

*Attorneys for Defendants*
*NETFLIX WORLDWIDE ENTERTAINMENT, LLC, NETFLIX MUSIC, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, MOR LOUSHY, and DANIEL SIVAN*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TYRA BANKS, an individual,

Plaintiff,

v.

NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, an individual, and DANIEL SIVAN, an individual,

Defendants.

CASE NO. 2:26-cv-06467-AB-DMK

**DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS**

Date: October 30, 2026
Time: 10:00 a.m.
Place: Courtroom 7B

Judge: Hon. André Birotte Jr.
Case Filed: June 13, 2026
Trial Date: Not Set

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 6

II. ARGUMENT .......... 8

A. The Court Should Strike Banks's State Law Claims. .......... 8

1. Banks's State Law Claims Arise from Protected Activity. .......... 8

2. Banks's State Law Claims Are Legally Deficient. .......... 9

a. Banks's Defamation Claims Fail as a Matter of Law. .......... 9

b. Banks Cannot Establish a Claim for False Light. .......... 16

c. Banks Fails to Plausibly Allege a Breach of Contract. .......... 17

B. The Court Should Dismiss All Claims Under Rule 12(b)(6). .......... 18

1. The Court Should Dismiss Banks's State Law Claims. .......... 18

2. The Court Should Dismiss Banks's Lanham Act Claim. .......... 19

a. Banks's Claim Is Barred Under *Rogers v. Grimaldi*. .......... 19

b. The Use of Banks's Image Was Nominative Fair Use. .......... 20

C. The Court Should Strike and Dismiss Banks's Claims With Prejudice. .......... 20

III. CONCLUSION .......... 20

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247 (App. Div. 2009) ........ 14

*Brian v. Richardson*, 660 N.E.2d 1126 (N.Y. 1995) ........ 15

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) ........ 20

*Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010) ........ 11, 12

*De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625 (Ct. App. 2018) ........ 10

*Dodds v. Am. Broad. Co.*, 145 F.3d 1053 (9th Cir. 1998) ........ 16

*Doe v. Gangland Prods., Inc.*, 730 F.3d 946 (9th Cir. 2013) ........ 8, 9

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ........ 20

*Fellows v. Nat'l Enquirer*, 721 P.2d 97 (Cal. 1986) ........ 16

*FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156 (Cal. 2019) ........ 9

*Forsher v. Bugliosi*, 608 P.2d 716 (Cal. 1980) ........ 13

*Greenfield v. Philles Records*, 780 N.E.2d 166 (N.Y. 2002) ........ 17

*Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025) ........ 19

*Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042 (S.D. Cal. 2020), *aff'd*, 8 F.4th 1148 (9th Cir. 2021) ........ 20

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021) ........ 12

*Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001) ........ 15

*Hope v. Hadley-Luzerne Public Library*, 94 N.Y.S.3d 723 (App. Div. 2019) .......... 15

*Jack Daniel's Props., Inc. v. VIP Prods., LLC*, 599 U.S. 140 (2023) .......... 19

*Kaelin v. Globe Comms. Corp.*, 162 F.3d 1036 (9th Cir. 1998) .......... 10, 11

*Lichfield v. Kubler*, 183 F.4th 1248 (10th Cir. 2026) .......... 16

*Masimore v. Srivastava*, 2026 WL 1020801 (C.D. Cal. Mar. 10, 2026) .......... 16

*Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148 (Cal. 1992) .......... 10, 16

*New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992) .......... 20

*Norman v. Ross*, 320 Cal. Rptr. 3d 384 (Ct. App. 2024) .......... 9

*Ojjeh v. Brown*, 257 Cal. Rptr. 3d 146 (Ct. App. 2019) .......... 8

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) .......... 12

*Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010) .......... 10, 14, 15

*R & R Surgical Inst. v. Int'l Longshore & Warehouse Union*, 2022 WL 1514653 (C.D. Cal. Jan. 5, 2022) .......... 17

*Schneider v. Warner Bros. Discovery*, 2026 WL 2664058 (Cal. Ct. App. Sept. 10, 2026) .......... 6, 10, 11, 13, 14

*Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37 (App. Div. 2014) .......... 10, 15, 16

*Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005 (C.D. Cal. 2002), *aff'd*, 45 F. App'x 801 (9th Cir. 2002) .......... 15

*Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149 (C.D. Cal. 2005) .......... 15

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876 (N.Y. 2004) .......... 18

*Woulfe v. Universal City Studios LLC*, 2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) .......... 8, 9

*Wynn v. Chanos*,
75 F. Supp. 3d 1228 (N.D. Cal. 2014) .... 15

*Wynn v. Nat'l Broad. Co.*,
234 F. Supp. 2d 1067 (C.D. Cal. 2002) .... 18

**Statutes**

Cal. Code Civ. Proc. § 425.16 .... 8, 9

**Other Authorities**

Restatement (2d) of Torts § 652E .... 17

# I. INTRODUCTION

Banks's opposition acknowledges that the central question on her defamation claims is a legal one. As Banks puts it, "[w]hether a work is reasonably susceptible of a defamatory implication is a question of law." Opp. 14. And accepting her allegations as true, "the only question is whether the Docuseries is reasonably susceptible of the meanings alleged." Opp. 9. To answer that question, the Court must watch the Documentary and determine whether a *reasonable* viewer of the *full* Documentary could draw the defamatory implications Banks alleges—*i.e.*, that Banks forgot about the 2004 incident with Shandi Sullivan, knew Sullivan was being sexually assaulted but failed to intervene, and later helped cover up the assault through her editing of *America's Next Top Model*. No reasonable viewer could. Banks's defamation and false light claims, which rely on unreasonable inferences and isolated fragments taken out of context, therefore fail as a matter of law.

Banks primarily argues that the Documentary defamed her by implying, at the end of Episode 1, that she forgot about "the story with" Sullivan. But the opening moments of Episode 2 show Banks saying that she *remembers*. Banks concedes that her claim depends on viewing Episode 1 in isolation. She cites no case endorsing that approach and the law clearly requires viewing the Documentary as a whole. *Schneider v. Warner Bros. Discovery*, a case decided after Defendants filed their motion—and an important decision that Banks fundamentally misreads in her opposition—forecloses Banks's theory. The court there analyzed a five-episode docuseries as a single work and held that alleged implications from episodes 1, 2, and 5 were not reasonable because they were dispelled in episode 4. -- Cal. Rptr. 3d --, 2026 WL 2664058, at *13–14 (Cal. Ct. App. Sept. 10, 2026). *Schneider* also rejects the kind of "hair-splitting analysis" in search of "a defamatory meaning which the [Documentary] does not convey" that Banks asks the Court to undertake. *Id.* at *15. And because no repleading could change the Documentary, Banks's defamation claims should be struck or dismissed with prejudice.

The opposition also narrows and clarifies what Banks alleges Defendants did

wrong: They allegedly "cut an affirmative answer" and a nod from one clip, "reversed the order" of a conversation, and "withheld . . . one fact" during Banks's interview. Opp. 23. But none of these complaints cures the fundamental problem with her claims. The full Documentary expressly shows that Banks remembers Sullivan's story; the edited conversation does not convey the defamatory implication Banks attributes to it; and allegedly withholding information from Banks during her interview conveyed nothing at all, let alone anything negative, to viewers. Nor can Banks change that conclusion through the two highly edited and digitally manipulated demonstratives submitted with her opposition. Those demonstratives add Banks's own commentary and advocacy to selected footage. Banks cannot rewrite or supplement the Documentary with outside evidence to demonstrate a *legally* sufficient claim. However Banks characterizes the filmmakers' editorial choices, the finished Documentary does not reasonably convey any of the defamatory meanings she alleges.

The consequences of Banks's meritless arguments extend well beyond this case, and the implications for documentary filmmaking are substantial. Banks's theory of defamation would allow an interviewee to subject filmmakers to lawsuits that automatically proceed to discovery simply by challenging their decisions about what footage to include, what footage to omit, or how to sequence and arrange the included footage. And if individual moments can be pulled out of a series and judged in isolation, ordinary storytelling techniques—such as creating suspense or leaving a question unanswered—could become the basis for defamation claims, even when the uncertainty is resolved moments later (as here) or several episodes later (as is common in the true crime genre). This is not the law, and it would leave documentary filmmakers with little room to tell a story. The Court should reject Banks's effort to turn ordinary editorial choices into actionable defamation.

Banks's other claims also fail because of fundamental and incurable legal defects. Her false light claim is based on the same conduct as her defamation claims and should be dismissed for the same reasons, among others. Her claim that EverWonder breached

the Agreement by overdubbing or replacing her words fails because she alleges no such conduct. She cannot establish that EverWonder breached the contract's limitation on "merchandising or commercial tie-ins" because she alleges no relevant conduct by EverWonder and the use of her image on the soundtrack Album's cover was authorized in-context promotion. And her Lanham Act claim fails because Defendants used Banks's image on the Album cover to promote the Documentary and reference Banks's celebrity persona, not to designate Banks as the Album's "source" or suggest that she sponsored or endorsed it. All of Banks's claims are deficient in ways that cannot be cured through amendment. The Court should strike and dismiss them with prejudice.

## II. ARGUMENT

### A. The Court Should Strike Banks's State Law Claims.

#### 1. Banks's State Law Claims Arise from Protected Activity.

Making a documentary and designing the cover of its promotional soundtrack—the conduct challenged by Banks—satisfies prong one of California's anti-SLAPP test. This is quintessential "conduct in furtherance of the exercise of . . . speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4).

First, the challenged conduct is clearly in furtherance of speech. Banks's "lawsuit arises directly from Defendants' act of" making, editing, and "broadcasting" the Documentary, and "[b]ut for" that conduct, Banks "would have no reason to sue Defendants." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 (9th Cir. 2013) (prong one was satisfied in lawsuit arising from documentary); *Ojjeh v. Brown*, 257 Cal. Rptr. 3d 146, 157 (Ct. App. 2019) (conduct related to making documentary was "'in furtherance of the right of free speech'"). The Album cover is likewise a "protected expressive work" and furthered speech by "increasing public engagement" with and "drumming up public interest in" the Documentary. *See Woulfe v. Universal City Studios LLC*, 2022 WL 18216089, at *4 (C.D. Cal. Dec. 20, 2022) (creating and disseminating a promotional trailer for a film was conduct in furtherance of speech).

Banks tries to frame the challenged conduct narrowly as "cutting a nod" or

"reversing a conversation." *See* Opp. 13. But courts reject such artificially narrow framing that focuses on only allegedly unlawful components of challenged conduct. *See Doe*, 730 F.3d at 954 (rejecting assertion that challenged conduct was "fraudulently disclos[ing] [plaintiff's] identity," rather than making the film that included the alleged disclosure); *Norman v. Ross*, 320 Cal. Rptr. 3d 384, 411 (Ct. App. 2024) (challenged conduct was "the making and distribution of" a television show, not the alleged "failure to pay" the plaintiff for her ideas). Banks's claims likewise arise from Defendants' making, airing, and promotion of the Documentary—conduct in furtherance of speech.

Second, this conduct concerned an issue of public interest. Banks concedes the Documentary was part of "renewed interest in ANTM" and "commentary" about the show, "critiquing [it] through a modern-day lens." Compl. ¶¶ 40, 90. By making the Documentary, Defendants "participated in, or furthered, th[at] discourse" about *ANTM* and its legacy. *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1165 (Cal. 2019).[1] Defendants also furthered that discourse by making the soundtrack Album and using Banks's image on its cover to promote the Documentary. Promotional materials featuring "figures in the public eye" help "advance[] public discourse" by promoting works that examine their legacies. *Woulfe*, 2022 WL 18216089, at *5 (trailer featuring The Beatles and promoting a film about their music was connected to an issue of public interest). The first prong of the anti-SLAPP test is therefore satisfied.

**2. Banks's State Law Claims Are Legally Deficient.**

Defendants also satisfy the second step of the anti-SLAPP test: Banks cannot establish "a probability that [she] will prevail" on any of her claims because each fails as a matter of law. Cal. Code Civ. Proc. § 425.16(b)(1).

**a. Banks's Defamation Claims Fail as a Matter of Law.**

The threshold legal question is whether the Documentary, "as a whole[,] can be reasonably read . . . to impart [the] defamatory inference[s]" that Banks alleges.

[1] Banks faults Defendants for not citing *FilmOn*, *see* Opp. 13, but Defendants cited *Woulfe*, a case from this District applying *FilmOn*'s standard. *See* Dkt. 30 at 12 (citing *Woulfe*); *Woulfe*, 2022 WL 18216089, at *5 (citing *FilmOn*).

Gibson, Dunn & Crutcher LLP

*Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37, 44 (App. Div. 2014); *see also Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010).[2] In answering this question, courts evaluate the challenged publication itself—not the plaintiff's characterization of it: "To the extent that [Banks's] description does not match the undisputed content" of the Documentary, the Court "cannot credit [her] description." *Schneider*, 2026 WL 2664058, at *12. Banks's defamation claims do not survive this inquiry.

***Second claim***: Banks cannot maintain a claim that the Documentary defames her by implying she forgot about the incident with Sullivan, because the Documentary expressly conveys just the opposite—that she remembers.

Banks concedes that her claim depends entirely on analyzing Episode 1 separately from the rest of the Documentary, and that Episode 2 includes the full sequence she claims was misleadingly edited in Episode 1. *See* Opp. 8, 10, 16–17. But the reasonableness of the alleged defamatory implication must be evaluated based on the *full* Documentary viewed "as a whole," *Stepanov*, 987 N.Y.S.2d at 44, not "based on snippets taken out of context," *Kaelin v. Globe Comms. Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998). Courts conducting this kind of analysis evaluate a multi-episode series as a single work. *See Schneider*, 2026 WL 2664058, at *13–15 (five-episode documentary analyzed as single work); *De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 643 (Ct. App. 2018) (eight-episode miniseries analyzed "in its entirety").

The recent *Schneider* decision confirms why Banks's argument fails. Consistent with well-established law, *Schneider* analyzed a "five-episode documentary" as a *single work*—even though these episodes were released over several weeks. 2026 WL 2664058, at *1, *13–15. And *Schneider* held that no reasonable viewer would draw a defamatory implication from specific sequences in Episodes 1, 2, and 5, because *Episode*

---

[2] New York law governs Banks's tort claims because the Agreement has a New York choice-of-law clause, which applies to all claims "arising from or related to" that Agreement. *Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148, 1155 (Cal. 1992). Banks's tort claims arise from and relate to her interview and its use in the Documentary, and the Agreement prescribed the terms of that use. But the Court does not need to resolve the choice-of-law question to decide Defendants' Motion, because Banks's tort claims fail under both New York *and* California law.

*4* expressly dispelled the alleged defamatory meaning in the other episodes. *Id*. at *15. Banks's opposition ignores this directly relevant discussion and instead emphasizes that *Schneider* concluded a *trailer* should be considered separately from the five-episode docuseries it promoted. Opp. 14–17. But the trailer in *Schneider* "was published and distributed separately" from the series, released more than a month earlier, posted on a different platform, and "intended to reach a broader audience" than the series itself. 2026 WL 2664058, at *8. None of those circumstances is present here. Banks alleges that all three episodes of the Documentary were released simultaneously on Netflix, *see* Compl. ¶¶ 88, 180. *Schneider*'s separate analysis of the trailer is therefore inapposite.

*Schneider* confirms that an alleged implication arising from part of a multi-episode work is not reasonable when the work as a whole expressly dispels it. That is decisive here. Whatever Episode 1 might momentarily leave unanswered, Episode 2 expressly answers: Banks says, "I do remember her story." No reasonable viewer would come away from the Documentary thinking that Banks "forgot." Tellingly, Banks does not cite any case in which a court analyzed one episode of a series in isolation, ignoring all other episodes, to assess whether the series conveyed the alleged defamatory implication to a reasonable viewer.

None of the other cases Banks relies on support her claim. *Kaelin* involved a front-page headline that the plaintiff alleged expressly defamed him; the defendants argued that a reference in an article on page 17 of the newspaper dispelled any defamatory meaning. 162 F.3d at 1041. The Ninth Circuit held that given the "peculiar nature of front page headlines," the headline and article could reach different audiences: "'those who merely glance at the headlines while waiting at the supermarket checkout'" would see the former but not the latter. *Id*. (citation omitted). Moreover, the reference in the article was a "different thought" and "not mutually exclusive" with the headline. *Id.* Nothing comparable is alleged here: Banks alleges that the full Documentary was released at once, Compl. ¶¶ 88, 180, and Episode 2 expressly and quickly negates any alleged implication. *Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010), also

supports Defendants because it reiterates the rule that "defamatory meaning must be found, if at all, in a reading of the publication as a whole." *Id.* at 443 (citation omitted). In *Crowe*, the defendant, a prosecutor, was interviewed about a murder investigation for a news program, and the program aired excerpts of her interview. The court held that the prosecutor's challenged statements had to be analyzed "in the context of the entire interview, not just the portion the program chose to air." *Id.* Evaluated in that full context, the prosecutor's statements did not convey the alleged defamatory meaning. *Id.* at 443–44. Here, Banks does not allege that her unaired interview defamed her; she alleges that the Documentary did. *Crowe* thus confirms that defamatory meaning must be assessed from the allegedly defamatory publication as a whole—here, the Documentary, not the unused footage Banks wishes Defendants had included.

Finally, even if Episode 1 could be viewed in isolation, it still does not support the alleged inference that Banks forgot "the story with Shandi." Banks focuses on what Defendants allegedly omitted from that sequence—her nod, her statement that she "remember[s]"—but the Court's task is to evaluate what the Documentary itself implies, not to parse whether it might have conveyed a different implication with different editorial choices. Nothing about Episode 1 suggests that Banks *forgot* the incident with Sullivan. Episode 1 ends with what Banks characterizes as a "cliffhanger," Opp. 16—an "unfinished answer," *id.*, that, in Banks's own telling, leaves expressly open the question of what Banks remembers. An unanswered question does not imply a false answer. *See Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995) (by posing a question, defendant "invite[d] the reader to consider" multiple "possibilit[ies]" and "negate[d] the impression that his statement implied a false assertion of fact").[3] No

[3] Banks attempts to support her opposition with demonstratives featuring edited clips of the Documentary and *ANTM*, using slow-motion and written commentary. Dkt. 42. Those demonstratives fail to establish any defamatory implication and are also beyond the scope of what the Court may consider under Rule 12(b)(6). *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021) (plaintiff's "reliance on evidence outside of [the] complaint in defending against [anti-SLAPP] motion was improper and inconsistent with the Federal Rules"). Further, Banks's reliance on edited footage—

[Footnote continued on next page]

reasonable viewer could infer that Banks must have forgotten about Shandi; the point here is to entice viewers to learn *what* Banks *remembers* about Sullivan.

***Third claim***: Banks's third claim, which focuses on Episode 2, likewise relies on unreasonable inferences and nonactionable statements and fails as a matter of law.

First, Banks alleges that the Documentary implies Banks knew in real time that Sullivan was being sexually assaulted and chose not to intervene. Compl. ¶ 221. She bases that inference on (1) Sullivan's statement that someone "should've . . . been like, all right, this has gone too far. Like, we gotta . . . pull her out of this," Tr. 57:24–58:2; (2) Banks's own statement that "production" was "not [her] territory," Tr. 58:7; (3) a title card that says Banks was "Executive Producer," Ep.2 0:02:02; and (4) the fact that "[n]othing in the Docuseries says that Banks was not there, did not know, or was not told," Opp. 19. None of this reasonably supports an implication that Banks knew an assault was occurring and chose not to intervene.

Courts "refrain from splitting hairs to find an" alleged defamatory implication, *Schneider*, 2026 WL 2664058, at *15, and they will not "scrutiniz[e] what is not said to find a defamatory meaning which the [publication] does not convey to a lay" viewer, *Forsher v. Bugliosi*, 608 P.2d 716, 722 (Cal. 1980) (citation omitted). That is what Banks asks the Court to do here. Sullivan's comment suggesting *someone* could have intervened never mentions or alludes to Banks. The "Executive Producer" title card does not imply Banks was on set at any particular moment, let alone when the assault occurred. And the Documentary uses similar title cards for other interviewees, including co-executive producer Ken Mok, which undermines Banks's allegation that the title card conveyed some specific defamatory message about her. E.g., Ep.2 0:02:15. Nor does the Documentary suggest that Banks was lying when she said "production" was "not [her] territory." To the contrary, after showing that disclaimer, the Documentary cuts directly to an interviewer asking Mok, but *not Banks*, whether he ever considered turning

---

manipulating and adding elements to the Documentary in a manner that no viewer would have seen it—underscores that the Documentary on its face implies no defamation.

the cameras off. Ep.2 0:02:09; Tr. 58:8–9. And Manuel explains that he and others were "off," not on set, when they "got word" about Sullivan's sexual encounter. Ep.2 0:02:43; Tr. 58:19–22. The Documentary never suggests that *Banks specifically* "got word" at all—and, even if she did, it indicates that the message relayed was that Sullivan was "having sex in the shower," *id.*, not anything about an assault. None of this adds up to a reasonable inference that the Documentary implies Banks knew an assault was occurring in real time and chose not to intervene. *See Schneider*, 2026 WL 2664058, at *15; *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 252 (App. Div. 2009).

Second, the Documentary never implies that Banks "orchestrat[ed] a sexual assault cover up" through "editing" of the relevant *ANTM* footage. Compl. ¶¶ 168, 197. Banks relies on Mok's statement that "we scaled back th[e] scene" showing Sullivan's sexual encounter, Ep.2 0:07:46; Tr. 62:19–21, and Banks's statement that "we didn't put everything on TV," Ep.2 0:08:37; Tr. 62:23–25. *See* Opp. 19. But the Documentary expressly tells viewers why the scene was "scaled back": Manuel explains that producers "re-edit[ed] that scene" because broadcast standards tightened after the 2004 Super Bowl Halftime Show controversy. Ep.2 0:08:05; Tr. 63:1–5. As in *Schneider*, the Court should not "split[] hairs to find an" implication that is contrary to what "the [D]ocumentary expressly states." 2026 WL 2664058, at *15. No reasonable viewer could infer from the Documentary that Banks was even involved in the editing of this particular episode, let alone that she edited it to conceal an assault.

Third, Banks cannot establish defamation based on the assertion that the Documentary falsely implies she "raised the subject of infidelity" with Sullivan. Opp. 19. Even accepting Banks's account of the full conversation, the sequence is "not reasonably susceptible of [a] defamatory connotation." *Ava*, 885 N.Y.S.2d at 251; *Price*, 620 F.3d at 1003. Sullivan had already disclosed infidelity on camera in the same *ANTM* episode, Compl. ¶¶ 96–100, and Banks concedes that the Documentary accurately shows her asking Sullivan, "You cheated on him?" Ep.2 0:04:38; Tr. 60:12. Banks alleges that the Documentary omits the preceding part of that conversation, but that does not make

the depiction defamatory: Banks *did* raise the question of whether *Sullivan* had been unfaithful, and she never alleges otherwise. Because nothing about the depiction is defamatory or "substantially" false, it is nonactionable. *Hope v. Hadley-Luzerne Public Library*, 94 N.Y.S.3d 723, 725 (App. Div. 2019); *Price*, 620 F.3d at 1000.

Interviewee Zakiya Gibbons's suggestion that Banks had "producers in her ear" and so "it's not a coincidence she start[ed] talking about cheating," Ep.2 0:03:17; Tr. 59:10–11, 60:6–7, is not actionable either. The context makes clear that Gibbons is not speaking based on first-hand knowledge, and her commentary is "rife with rumor, speculation and seemingly tenuous inferences," signaling to any reasonable viewer that she is not offering "assertions of fact" or "serious, objective reportage." *Brian v. Richardson*, 660 N.E.2d 1126, 1131 (N.Y. 1995). That is nonactionable opinion. *Id*. at 1129; *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1157 (C.D. Cal. 2005).

***No plausible defamatory intent***. Because none of Banks's alleged defamatory implications is reasonable, the Court does not need to reach the separate question of whether Banks plausibly alleged that Defendants "intended or endorsed [those] defamatory inference[s]." *Stepanov*, 987 N.Y.S.2d at 44; *see also Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1188 (9th Cir. 2001). But her claims fail on that separate ground as well. Contrary to Banks's argument, Opp. 21–22, courts dismiss defamation-by-implication claims on the pleadings where "[t]he language" and content of the challenged publication preclude an inference the defendant "intended to convey" the alleged defamatory implication. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1237 (N.D. Cal. 2014) (granting motion to dismiss); *Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002), *aff'd*, 45 F. App'x 801 (9th Cir. 2002) (same).[4]

Setting aside that the implications Banks alleges cannot be reasonably inferred from the Documentary, there is the additional infirmity that the Documentary "itself contain[s] [no] language demonstrating that [Defendants] endorse[d] any such

---

[4] This is an intent-to-convey requirement for defamation by implication, not the distinct question of actual malice that Defendants preserved for later stages of the case.

defamatory implication." *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1064 (9th Cir. 1998); *Stepanov*, 987 N.Y.S.2d at 44. That Banks resorts to convoluted explications and altered videos to even describe the alleged calumnies, *see* Opp. 8—the very hair-splitting that *Schneider* expressly rejects—establishes that it is not plausible as a matter of law that Defendants could have intentionally meant the Documentary to be understood that way. Why would these negative inferences be so oblique? If Defendants "had meant to accuse" Banks of what she alleges, the Documentary would surely "say more and say it explicitly at some point in the series." *Lichfield v. Kubler*, 183 F.4th 1248, 1261 (10th Cir. 2026). But it does not, and so Banks fails to plausibly allege that Defendants intended to convey the implications on which her claims depend.[5]

**b. Banks Cannot Establish a Claim for False Light.**

Banks's false light claim fails for several independent reasons. Banks does not dispute that New York does not recognize a false light claim. *See* Opp. 23. New York law governs Banks's state-law claims under the Agreement's choice-of-law provision. *See Nedlloyd Lines*, 834 P.2d at 1155. The claim therefore fails.

Banks's false light claim fails under California law, too; it "falls" with her defamation claims because it is "based on the same" alleged implications. *See Masimore v. Srivastava*, 2026 WL 1020801, at *5 (C.D. Cal. Mar. 10, 2026). Banks responds that false light is a "distinct" tort "pleaded on different conduct." Opp. 23. But her Complaint says otherwise: the false light claim rests on the same allegedly defamatory portrayal underlying her defamation claims. *See* Compl. ¶¶ 197–199. And Banks's own authority recognizes the "substantial overlap between the two torts." *Fellows v. Nat'l Enquirer*, 721 P.2d 97, 99–100 (Cal. 1986). Because the Documentary does not reasonably convey the defamatory implications Banks alleges, repackaging those same implications as false light does not save them.

[5] Banks appears to have abandoned the argument that Defendants defamed her by allegedly "withholding" that Sullivan described the encounter as an "assault." *See* Compl. ¶¶ 11, 104–105, 152. As Defendants explained, those allegations do not amount to defamation. *See* Dkt. 30 at 19–20. Banks's opposition never argues otherwise.

Banks's claim fails for the additional reason that false light protects a privacy interest and Banks alleges no invasion of privacy. Because "false light is a division of invasion of privacy tort, the claim must relate to the plaintiff's interest in privacy" and does not extend to matters that are "in essence 'public' themselves." *R & R Surgical Inst. v. Int'l Longshore & Warehouse Union*, 2022 WL 1514653, at *5 (C.D. Cal. Jan. 5, 2022); *see also* Restatement (2d) of Torts § 652E (false light is a tort for "invasion of privacy"). Courts dismiss false light claims where, as here, the challenged statements "exclusively relate[] to Plaintiff's public professional life." *R & R Surgical Inst.*, 2022 WL 1514653, at *5. Banks gave an on-camera interview for a documentary about a show she created and hosted. She alleges no harm to an "interest in privacy." *Id.*

**c. Banks Fails to Plausibly Allege a Breach of Contract.**

Banks's three alleged breaches of contract, *see* Opp. 24, fail as a matter of law.

First, Banks does not plausibly allege that EverWonder edited her interview "in a manner that constitutes actionable defamation." Dkt. 1-8 at 2; Compl. ¶ 239. Banks's defamation-by-implication claims fail as a matter of law. *Supra* § II.A.2.a. And only her second claim arguably implicates the contractual prohibition, because the third takes issue with how Defendants presented *other people*'s interviews—not the "manner" in which they "edit[ed] Ms. Banks's" interview footage. Dkt. 1-8 at 2.

Second, Banks does not plausibly allege "overdub[bing] or otherwise replac[ing] any words actually spoken by" Banks "with other words that materially and objectively alter the meaning." Dkt. 1-8 at 2. Banks says EverWonder edited her response in Episode 1 to "turn[] 'I do remember her story' into 'Um' and silence." Opp. 24. But the "um" was part of Banks's actual response, *see* Opp. 10; Tr. 58:5–7, and omitting the remainder of her response did not replace it "*with other words*," Dkt. 1-8 at 2 (emphasis added). The Agreement expressly *authorizes* Defendants to edit Banks's interview footage. *Id.* Banks cannot convert the "overdub[bing]" provision into a prohibition on editing her words at all. *Greenfield v. Philles Records*, 780 N.E.2d 166, 170 (N.Y. 2002) (unambiguous contracts are enforced according to their plain meaning).

Third, Banks does not plausibly allege that EverWonder breached the Agreement's limitation on "merchandising or commercial tie-ins" based on Netflix Music's use of her image on the Album cover. Compl. ¶¶ 191–92, 259. Banks alleges no conduct by EverWonder involving the Album cover and identifies no basis to hold EverWonder liable for Netflix's or Netflix Music's alleged conduct. *See Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004). Banks responds that the Agreement "defines 'Producer' to include [EverWonder's] 'licensees,'" including Netflix. Opp. 25 (quoting Dkt. 1-8 at 2). But that definition does not make EverWonder liable for a licensee's conduct, and Banks neither asserts a contract claim against Netflix or Netflix Music nor alleges that either was bound by the Agreement.

Nor does Banks dispute that the Agreement expressly permits "in-context publicity and promotion." Dkt. 1-8 at 2. She argues that provision doesn't apply because her Complaint characterizes the Album as a "discrete commercial product." Opp. 25 (citing Compl. ¶¶ 186–93). But "[t]he Court need not accept as true" that kind of "conclusory allegation[] or legal characterization[]." *See Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1091 n.13 (C.D. Cal. 2002). The Complaint confirms that the Album promoted the Documentary: It had the same title, the subtitle "Soundtrack from the Netflix Documentary Series," and a cover depicting the Documentary's principal interviewees. Compl. ¶ 186. Banks's own allegations thus confirm that this was "in-context publicity and promotion"—a permitted use. Dkt. 1-8 at 2.

And Banks does not plausibly allege damages caused by the use of her image. The Complaint vaguely alleges "damages including the costs of mitigating the harm" from all three alleged breaches. Compl. ¶ 240. But it never identifies the harm, alleges what Banks did to mitigate it, or differentiates between the breaches. That circular, conclusory assertion does not plausibly establish the elements of her claim.

**B. The Court Should Dismiss All Claims Under Rule 12(b)(6).**

**1. The Court Should Dismiss Banks's State Law Claims.**

Banks's state law claims fail under Rule 12(b)(6) for the same reasons that they

fail under the second prong of the anti-SLAPP framework. *Supra* § II.A.2. If the Court does not strike any of those claims, it should dismiss them under Rule 12(b)(6).

**2. The Court Should Dismiss Banks's Lanham Act Claim.**

Banks's opposition confirms that her Lanham Act claim rests entirely on the use of her face on the Album cover—specifically, its positioning and prominence in what she calls "the dominant visual position conventionally occupied . . . by the featured artist." Opp. 25. Banks alleges nothing else suggesting that she sponsored or endorsed the Album. That is insufficient to state a false endorsement claim as a matter of law.

**a. Banks's Claim Is Barred Under *Rogers v. Grimaldi*.**

Banks asserts that *Rogers* does not apply because her image was used to designate the Album's source, Opp. 25–26, but the mere use of her image does not make it source-identifying. *Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025) confirms that *Rogers* continues to apply after *Jack Daniel's Props., Inc. v. VIP Prods., LLC*, 599 U.S. 140 (2023), where the use is not source-identifying. *Hara*, 146 F.4th at 879. As in *Hara*, Banks's "allegations fail to establish that [her] likeness was used by Defendants *as a mark*." *Id*. at 880. "Defendants' alleged use of [Banks's] image," standing alone, "does not speak to the [Album's] origin." *Id*. (alterations and citation omitted). Banks's own allegations confirm that her image was *not* used to identify the Album's source. The cover calls the Album the "Soundtrack from the Netflix Documentary Series," displays Netflix's logo, gives the Documentary's title, and lists the Album's composers. Compl. ¶¶ 17, 186. Banks's image appears alongside several other subjects of the Documentary. *Id*. Nothing about that cover plausibly suggests that Banks—rather than Netflix or the identified composers—"was the source or origin of" the Album. *Hara*, 146 F.4th at 880.

Banks does not dispute that if *Rogers* applies, it bars her claim. She does not allege that the Album cover has "no artistic relevance to the underlying work whatsoever" or that it "explicitly misleads as to the source or the content of the work." *Hara*, 146 F.4th at 877, 882–84; *see* Dkt. 30 at 24–25. The Court therefore should "not apply § 43(a) of the Lanham Act" to this use. *Hara*, 146 F.4th at 877.

**b. The Use of Banks's Image Was Nominative Fair Use.**

The Court can also dismiss under the nominative fair use doctrine because (1) Banks's persona is "not readily identifiable without the use of" her image, (2) "only so much" of her image was used as "reasonably necessary to identify" her, and (3) Defendants "d[id] nothing that would, in conjunction with" the use of her image, "suggest [Banks's] sponsorship or endorsement" of the Album. *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Banks argues Defendants "us[ed] [her] image 'to describe the plaintiff's product, rather than [their] own,'" Opp. 26 (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001)), but Defendants used Banks's likeness to identify Banks and her role in the Documentary, *see Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1144, 1152–53 (9th Cir. 2002). In *Downing*, by contrast, the defendant used the plaintiffs' photograph "to sell its goods," not to refer to the plaintiffs. 265 F.3d at 1009. Banks also argues Defendants "did not reasonably need to use Banks's face to describe" the Album. Opp. 26. But the cover used Banks's image, among others, only as "necessary to identify [her] as [a] subject of" the Documentary, which the Album promoted. *New Kids*, 971 F.2d at 308. And Banks alleges no statement or act "in conjunction with" (i.e., *beyond*) the use of her image that "suggest[s] [her] sponsorship or endorsement" of the Album. *Id.*

**C. The Court Should Strike and Dismiss Banks's Claims With Prejudice.**

Because "no set of facts" "could support a claim . . . based on" the Documentary or Album cover, Banks's complaint should be "dismissed with prejudice." *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1054 (S.D. Cal. 2020) (granting anti-SLAPP motion with prejudice), *aff'd*, 8 F.4th 1148 (9th Cir. 2021). No amendment could change the Documentary's content or make the use of Banks's image source-identifying or explicitly misleading. The Court should deny leave to amend.

## III. CONCLUSION

The Court should strike Banks's state law claims, dismiss all remaining claims with prejudice, and award Defendants their attorneys' fees and costs.

Dated: October 12, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jay P. Srinivasan*
JAY P. SRINIVASAN

Attorneys for Defendants *NETFLIX WORLDWIDE ENTERTAINMENT, LLC, NETFLIX MUSIC, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, MOR LOUSHY, and DANIEL SIVAN*

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,497 words, which complies with the word limit of L.R. 11-6.1, and is 15 pages, in compliance with paragraph 12(c) of this Court's Standing Order.

Dated: October 12, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jay P. Srinivasan*
JAY P. SRINIVASAN

Attorneys for Defendants *NETFLIX WORLDWIDE ENTERTAINMENT, LLC, NETFLIX MUSIC, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, MOR LOUSHY, and DANIEL SIVAN*