Mitchell Langberg (CA Bar No. 171912)
mitch@clarelocke.com
Thomas A. Clare (*pro hac vice*)
tom@clarelocke.com
Megan McGuiggan (*pro hac vice*)
megan.mcguiggan@clarelocke.com
Carolyn M. Wesnousky (*pro hac vice*)
carrie@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400

Stephen M. Doniger (CA Bar No. 179314)
stephen@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
(310) 590-1820

*Attorneys for Plaintiff, Tyra Banks*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

TYRA BANKS, an individual,

Plaintiff,

v.

NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, an individual, and DANIEL SIVAN, an individual,

Defendants.

Case No. 2:26-cv-06467-AB-DMK

**AMENDED JOINT RULE 26(f) REPORT**

Scheduling Conference
Date: November 6, 2026
Time: 10:00 a.m.
Courtroom: 7B
Judge: Hon. André Birotte Jr.

Pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, the Court's Standing Order (Dkt. 18), and the Court's October 2, 2026 Order Setting Scheduling Conference (Dkt. 54), Plaintiff Tyra Banks ("Plaintiff" or "Ms. Banks") and Defendants Netflix Worldwide Entertainment, LLC and Netflix Music, LLC (together, "Netflix"), 89 Blocks Holdings, LLC d/b/a EverWonder Studio ("EverWonder"), Mor Loushy, and Daniel Sivan (collectively, "Defendants") submit this Amended Joint Rule 26(f) Report. Counsel conducted the Rule 26(f) conference by Zoom on August 26, 2026, and further conferred regarding this Report on October 23, 2026.

This Report amends and supersedes the parties' September 9, 2026, Joint Report and Discovery Plan (Dkt. 34) to address additional subjects and otherwise comply with the requirements set forth in the Court's October 2, 2026 Order Setting Scheduling Conference. The Schedule of Pretrial and Trial Dates Worksheet is attached as Exhibit A.

**A. <u>Statement of the Case</u>**

**Plaintiff's Statement.** Ms. Banks, the creator, host, and an executive producer of *America's Next Top Model* ("ANTM"), sat for a three-and-a-half-hour interview for *Reality Check: Inside America's Next Top Model* (the "Series"), which premiered on Netflix in February 2026. She alleges that Defendants used selective editing and omission—including cutting her affirmative answer to a question about contestant Shandi Sullivan at the close of Episode 1, rearranging original ANTM footage in Episode 2, and withholding from her that Ms. Sullivan had come to describe an encounter in Milan as a sexual assault to falsely convey that she knowingly allowed a contestant to be assaulted on her show, exploited that trauma for ratings, and could not remember it when asked.

Ms. Banks asserts claims for (1) false light and (2)–(3) defamation by implication, based on Episodes 1 and 2, against EverWonder, Ms. Loushy, and Mr. Sivan; (4) breach of contract

against EverWonder, for editing her material in a manner that defamed her and altered the meaning of her words, exceeding the scope of the July 18, 2025, agreement governing her footage (the "Agreement"), and using her likeness in merchandising and as an endorsement without her written consent; and (5) false endorsement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against EverWonder, Netflix Worldwide Entertainment, LLC, and Netflix Music, LLC, for using her image on the cover of the Series' soundtrack album. She seeks compensatory, presumed, special, and punitive damages; contract damages; and, under the Lanham Act, injunctive relief, disgorgement of profits, actual and enhanced damages, and attorneys' fees.

**Defendants' Statement.** On April 18, 2025, Ms. Banks sat for an on-camera interview in connection with a documentary series about the legacy of *America's Next Top Model*, the reality television series that Ms. Banks created, executive produced, and hosted. After the interview, Ms. Banks signed an Acknowledgment & Release in which she granted Defendant EverWonder "the right to edit" and use her interview footage and acknowledged that she had "no right to review or approve" the use of her interview in the series.

The three-episode documentary series, *Reality Check: Inside America's Next Top Model* (the "Documentary") was released on Netflix on February 16, 2026. The Documentary explores all aspects of the legacy and impact of *America's Next Top Model*, and reexamines several storylines from that reality television show. The Documentary includes excerpts from the interviews of numerous participants, including Ms. Banks, interspersed with archival footage of *America's Next Top Model* and other footage. The Documentary depicts Ms. Banks, her interview statements, and the events in which she was involved while hosting and producing *America's Next Top Model* in a fair, accurate, and even-handed manner. Defendants reject and deny that Ms. Banks's claims and allegations that the Documentary defames her, portrays her in a false light, or misrepresents her conduct or statements.

In connection with the Documentary, Netflix Music released a 26-track soundtrack album titled "Reality Check: Inside America's Next Top Model (Soundtrack from the Netflix Documentary Series)." The soundtrack album was released to promote the Documentary. The album cover depicts four of the Documentary's interviewees, including Ms. Banks, in a manner that clearly references the Documentary and those individuals' participation in it, without implying that they created or endorsed the soundtrack album. Defendants reject and deny that Ms. Banks's claims and allegations regarding the use of her image on the album cover.

Because Defendants' Special Motion to Strike and Motion to Dismiss (Dkt. 30) is pending, Defendants have not yet served an answer or asserted affirmative defenses or counterclaims.

**B. Subject Matter Jurisdiction**

The Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's Fifth Claim, which arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff contends that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) over Plaintiff's state-law claims (First through Fourth Claims), which are asserted only against EverWonder, Ms. Loushy, and Mr. Sivan. Plaintiff is a citizen of California and she contends that none of those Defendants is a California citizen; and that the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper under 28 U.S.C. § 1391(b).

**C. Legal Issues**

Many of the key legal issues are presented by Defendants' pending Special Motion to Strike and Motion to Dismiss (Dkt. 30), which is set for hearing on October 30, 2026. The key legal issues may include:

1. **Defamation by implication.** The appropriate legal standards applicable to defamation by implication and whether, under those standards, the challenged

content is susceptible to the defamatory implications alleged, as a matter of law; whether any challenged implications are substantially true, opinion, and/or not injurious to Plaintiff's reputation as a matter of law.

2. **False light.** Whether false light is cognizable under the governing law and whether it is duplicative of the defamation claims.

3. **The Agreement.** The scope and effect of the Agreement's relevant provisions, including the release, editing authorization, and disclaimer of review rights; and whether those provisions bind Defendants who were not parties to the Agreement.

4. **Lanham Act.** Whether the album cover's use of Plaintiff's image is analyzed under the likelihood-of-confusion standard or *Rogers v. Grimaldi*, *see Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025); whether nominative fair use applies; and whether the use was likely to cause confusion as to Plaintiff's endorsement.

5. **Choice of Law.** Whether California or New York law governs Plaintiff's tort claims.

6. **Remedies.** The availability and measure of presumed, special, and punitive damages; disgorgement and enhanced damages under 15 U.S.C. § 1117(a); injunctive relief; attorneys' fees under 15 U.S.C. § 1117(a); and Defendants' entitlement to attorneys' fees and costs under Cal. Code Civ. Proc. § 4245.16(c).

**Evidentiary Issues.** Plaintiff has served two sets of Requests for Production on Defendants. The parties have agreed to extend Defendants' deadline to respond to those Requests until after the Court rules on Defendants' pending Special Motion to Strike and Motion to Dismiss (Dkt. 30). The parties agree that the Court, in resolving Defendants' pending motion, may review and consider the Documentary, which Defendants lodged with the Court and which the Complaint incorporates by reference. *See* Dkt. 32. With respect to that motion, Plaintiff has

requested judicial notice of two exhibits created using excerpts of the Documentary and an episode of ANTM; Defendants oppose judicial notice. *See* Dkts. 43, 56.

**D. Parties, Evidence, etc.**

**Parties.** Plaintiff Tyra Banks. Defendants Netflix Worldwide Entertainment, LLC; Netflix Music, LLC; 89 Blocks Holdings, LLC d/b/a EverWonder Studio; Mor Loushy; and Daniel Sivan.

**Corporate Parents, Subsidiaries, and Affiliates.** Per Defendants' Rule 7.1 statement (Dkt. 28), Netflix Worldwide Entertainment, LLC and Netflix Music, LLC are wholly owned subsidiaries of Netflix, Inc., a publicly traded company with no parent and no 10% public shareholder. 89 Blocks Holdings, LLC has two members, RedBird IMI Media Joint Venture, LLC and 89 Blocks Management LLC.

**Percipient Witnesses.** The parties have exchanged Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). Consistent with her Initial Disclosures, and without prejudice to supplementation, Plaintiff identifies the following persons as potential percipient witnesses: Tyra Banks; Mor Loushy; Daniel Sivan; Jonathan Adler; Ian Orefice; Jason Beekman; Ryan Miller; Vanessa Golembewski; John Raphael Oliveira; Ted Sarandos; Reed Hastings; Matthew Hilzik; Sarah Teicher; Dawn Ostroff; Derek Won; Rachel Gwozdz; Zakiya Gibbons; Jay Manuel; J. Alexander; Nigel Barker; Shandi Sullivan; Ken Mok; Carolyn London.

Defendants disagree that the vast majority of the individuals identified in Plaintiff's overbroad list are percipient witnesses to the relevant events implicated by this action. Consistent with their Initial Disclosures, and without prejudice to supplementation, Defendants identify the following persons as potential percipient witnesses: Tyra Banks; Mor Loushy; Daniel Sivan.

**Key Documents.** To the extent the Court does not dismiss this action on the pleadings, the parties anticipate that key documents and audiovisual evidence may include the following:

(a) The documentary series *Reality Check: Inside America's Next Top Model*; (b) Footage and transcripts of certain interviews conducted in connection with the Documentary, including those of Ms. Banks, Ms. Sullivan, and Mr. Mok; (c) Certain communications among and between Defendants, or between Defendants and other persons, related to the Documentary; (d) Certain communications between Plaintiff and other persons related to the Documentary and to *America's Next Top Model*; (e) the Acknowledgment & Release executed by Plaintiff, as well as drafts of and communications related to that Acknowledgment & Release; (f) ANTM Cycle 2, Episodes 9 and 10; (g) Certain publicly available statements by Plaintiff, Defendants, and other persons; and (h) Certain documents related to the soundtrack album and its cover. Plaintiff contends that additional key documents may include: (a) versions, cuts, outlines, scripts, and editing files of the Documentary; (b) the pre-interview communications, pitch, and topic list that were provided to Ms. Banks; (c) licensing, marketing, and revenue records related to the soundtrack album and its cover; (d) viewership data for the Documentary; and (e) social media reflecting audience understanding of the Documentary.

**E. <u>Damages</u>**

**Plaintiff's Position.** Plaintiff seeks presumed and general damages for reputational harm; special damages, including lost business opportunities and the costs of mitigating the harm caused by the Series; punitive damages; compensatory damages for breach of the Agreement; and, on her Lanham Act claim, disgorgement of profits, actual damages, and enhanced damages. It is premature to estimate a realistic range of provable damages. Even Plaintiff's special damages will require substantial expert analysis, and her presumed, general, and punitive damages and her claim for disgorgement depend on discovery, including financial and viewership information in Defendants' possession.

**Defendants' Position.** Plaintiff is not entitled to recover any damages, including

presumed damages, general damages, special damages, punitive damages, compensatory damages, disgorgement of profits, actual damages, and/or enhanced damages.

**F. <u>Insurance</u>**

**Plaintiff:** Not applicable.

**Defendants:** Defendants are not currently aware of any responsive insurance agreement.

**G. <u>Motions</u>**

**Pending.** Defendants' Special Motion to Strike and Motion to Dismiss (Dkt. 30) is set for hearing on October 30, 2026.

**Amended Pleadings.** If the Court grants Dkt. 30 in any part with leave to amend, Plaintiff anticipates filing an amended complaint; Plaintiff has requested leave to amend as to any claim found deficient (Dkt. 41). Plaintiff may also seek leave to amend based on information obtained in discovery.

**Additional Parties.** The parties do not presently anticipate adding parties. Plaintiff reserves the right to seek to add parties if discovery warrants. Defendants have reserved the right to assert counterclaims.

**Transfer.** No party anticipates a motion to transfer venue.

**Discovery Stay.** There is no formal discovery stay in place. As set forth in Section J, the parties have agreed to extend Defendants' deadline to respond to pending discovery requests until after the Court rules on Defendants' Special Motion to Strike and Motion to Dismiss (Dkt. 30).

**H. <u>Dispositive Motions</u>**

**Plaintiff's Position.** Plaintiff believes the issues in this case are appropriate for resolution by a jury. Discovery may reveal a basis for summary judgment on particular issues, but it is too early to identify them.

**Defendants' Position.** To the extent Plaintiff's claims are not dismissed at the pleading stage, all of Plaintiff's claims may be dismissed on a motion for summary judgment.

Any cross-motions will follow the procedure in Paragraph 13(d) of the Standing Order (Dkt. 18).

**I. Manual for Complex Litigation**

The parties do not believe the procedures of the Manual for Complex Litigation are needed.

**J. Status of Discovery**

The parties held their Rule 26(f) conference on August 26, 2026, and exchanged Rule 26(a)(1) initial disclosures on September 16, 2026.

Plaintiff served her First Set of Requests for Production on September 11, 2026 (seeking unedited interview recordings and edited footage and cuts of the Series) and her Second Set on September 14, 2026 (seeking documents concerning the editing of the Series and concerning Ms. Banks). Defendants have not served discovery. No depositions have been taken. No protective order or ESI protocol has yet been submitted.

On September 25, 2026, to avoid motion practice over Defendants' request for a discovery stay, the parties agreed, in relevant part, that Defendants need not respond to Plaintiff's First or Second Set of Requests for Production if the Court grants Defendants' Special Motion to Strike and Motion to Dismiss (Dkt. 30) without leave to amend. If the Court grants that motion with leave to amend, the parties will meet and confer on whether and how to proceed with discovery. If the Court denies the motion, Defendants will respond to Plaintiff's pending Requests for Production within 14 days of the ruling.

**K. Discovery Plan**

**Rule 26(a) Disclosures.** No changes are requested. Initial disclosures were exchanged

on September 16, 2026, and the parties will supplement as necessary under Rule 26(e).

**Subjects of Plaintiff's Discovery.**

1. The complete, unedited audio and video recordings, and transcripts, of the interviews of Ms. Banks, Ms. Sullivan, Jay Manuel, J. Alexander, Nigel Barker, Ken Mok, and others who commented on Ms. Banks.

2. The editing of the Series: drafts and versions; assembly, rough, intermediate, fine, and picture-locked cuts; outlines, scripts, and editor, director, producer, and story notes; and native editing project files, edit decision lists, and timecoded logs for the challenged sequences in Episodes 1 and 2.

3. The development of the Series' narrative and any editorial, legal, or factual review, including the decision to air the sequences involving Ms. Banks, Ms. Sullivan, and the Milan episode.

4. When and how Defendants learned that Ms. Sullivan characterized the Milan events as a sexual assault, and whether and when that information was shared internally before Ms. Banks' interview.

5. Communications with Ms. Banks and her representatives before and after the interview, including the pitch and topic list, and the negotiation and execution of the Agreement.

6. The licensing chain among EverWonder, Netflix, and Netflix Music, and the creation, approval, marketing, and revenue of the soundtrack album and its cover.

7. Viewership data for the Series, including completion of Episode 1 and the share and timing of viewers who began Episode 2.

8. Netflix's knowledge of and decisions regarding the Series, and the November 2025 request that Ms. Banks address Netflix leadership.

9. Depositions of Ms. Loushy, Mr. Sivan, and the individuals responsible for editing the challenged sequences, developing the narrative, approving the edits, and reviewing the Series for accuracy, as well as other witnesses listed in Section D.

10. Third-party discovery by subpoena, including to non-party co-producer Wise Child Studios LLC, the Series consultants, Ms. Sullivan, Mr. Mok, and others identified in Section D.

**Subjects of Defendants' Discovery.**

1. Plaintiff's participation in the Documentary, including communications to, from, and between Plaintiff and others regarding Plaintiff's participation in the Documentary and the Documentary itself.

2. Plaintiff's execution of the Acknowledgment & Release, and the facts surrounding this execution.

3. The events depicted in Cycle 2, Episode 10 of *America's Next Top Model*, including Plaintiff's involvement in and knowledge of such events and public statements regarding such events.

4. Plaintiff's reputation before the Documentary's release.

5. Plaintiff's alleged damages.

**Phasing.** At this time, the parties do not anticipate that discovery should be conducted in phases or limited to particular issues.

**Deposition Limits.** *Plaintiff's Position:* In light of the number of percipient witnesses identified in Section D, Plaintiff proposes that each side be permitted to take up to 20 depositions, rather than the 10 allowed under Rule 30(a)(2)(A)(i). *Defendants' Position:* The issues in this case do not warrant any departure from the limit of 10 depositions set forth in Rule 30(a)(2)(A)(i). The factual issues in dispute are narrow and implicate far fewer than 10 witnesses per side. The

parties do not otherwise request changes to the discovery limits in the Federal Rules or the Local Rules.

**Electronically Stored Information.** The parties will submit a stipulated ESI protocol addressing custodians, search methodology, and production format. The parties anticipate seeking ESI including email, text and messaging-app communications, video, and editing systems.

**Privilege.** The parties will comply with Rule 26(b)(5). Privileged communications and work product created on or after June 13, 2026 need not be logged. Logs will identify, to the extent reasonably available, the date, author(s), recipient(s), file type, and non-privileged subject of each item; the privilege claimed (*e.g.*, "ACP" or "WP"); and a unique identifier. Rule 26(b)(5)(B) and Federal Rule of Evidence 502 govern inadvertent production; the protective order will include non-waiver and clawback provisions.

**Protective Order.** The parties will submit a stipulated protective order to the assigned Magistrate Judge (Dkt. 18 ¶ 14). The parties understand the order will not authorize under-seal filing without further Court order.

**Service.** Under Rule 5(b)(2)(E), the parties consent to email service of discovery requests, deposition notices, disclosures, responses, and other papers not filed through CM/ECF. Papers served by 11:59 p.m. Pacific time on the due date are timely.

**L. <u>Discovery Cut-off</u>**

The parties propose a non-expert discovery cut-off of June 11, 2027, by which all depositions must be completed, responses to previously served written discovery provided, and discovery motions heard. Defendants maintain that it is premature to set discovery dates before the Court rules on Dkt. 30 but join in this proposal if the Court sets a schedule now.

**M. Expert Discovery**

The parties propose the following dates. Initial expert disclosures: June 25, 2027. Rebuttal expert disclosures: July 30, 2027. Expert discovery cut-off: August 20, 2027, before the September 10, 2027 deadline to file dispositive motions. Defendants maintain that it is premature to set discovery dates before the Court rules on Dkt. 30 but join in this proposal if the Court sets a schedule now.

**N. Settlement Efforts and Alternative Dispute Resolution**

**Settlement Discussions to Date.** The parties have not engaged in any formal settlement discussions to date.

**ADR Procedure.** The parties select private mediation (ADR Procedure No. 3). They believe mediation will be most productive after meaningful discovery, and they propose to complete it well before the November 19, 2027 settlement-conference deadline in Exhibit A. The parties acknowledge that all parties, including an officer with full settlement authority for each corporate party, must appear personally at the ADR proceeding.

**O. Trial Estimate**

Plaintiff has demanded a jury trial.

**Plaintiff's Estimate:** 10 to 14 court days, with approximately 8 to 12 witnesses. The estimate reflects five claims against five defendants with differing claim-by-claim exposure, extensive audiovisual evidence that must be played and compared for the jury, expert testimony, and Defendants' affirmative defenses based on the Agreement.

**Defendants' Estimate:** 4 to 5 court days, with approximately 4 to 6 witnesses.

**P. Trial Counsel**

**Plaintiff:** Thomas A. Clare and Mitchell Langberg, Clare Locke LLP

**Defendants:** Jay P. Srinivasan and Ilissa Samplin, Gibson, Dunn & Crutcher LLP.

**Q.** **<u>Independent Expert or Master</u>**

At this time, the parties do not believe appointment of a special master or independent expert is or will become necessary.

**R.** **<u>Schedule Worksheet</u>**

The completed worksheet is attached as Exhibit A. The parties have agreed on all dates. The parties have amended the schedule worksheet that they previously filed on September 9, 2026, *see* Dkt. 34, to move the proposed trial start date one week later, from February 21, 2028 to February 28, 2028, to avoid a conflict with Presidents' Day.

The proposed Rule 56 schedule (motion filed September 10, 2027; opposition October 8, 2027; reply October 29, 2027; hearing November 12, 2027) is a stipulated extended schedule pursuant to Paragraph 13(d) of the Standing Order, with two weeks between reply and hearing. Defendants maintain that it is premature to set these dates before the Court rules on Dkt. 30 but join in them if the Court sets a schedule now.

**S.** **<u>Other Issues</u>**

**Pending Motion.** The hearing on Dkt. 30 is set for October 30, 2026, one week before the Scheduling Conference. If the Court's ruling on Dkt. 30 grants leave to amend, materially narrows the issues and/or claims in the case, or otherwise materially affects the proposed schedule set forth herein, the parties will promptly meet and confer regarding any adjustments to the case schedule and, if warranted, submit a stipulation to adjust the relevant deadlines.

**Volume and Form of Audiovisual Discovery.** Discovery may include a material amount of audiovisual material and editing files. The parties will address format, metadata, and timecode in the ESI protocol.

Dated: October 23, 2026.

By: /s/ *Mitchell Langberg*
MITCHELL LANGBERG
mitch@clarelocke.com
Thomas A. Clare, P.C. (*pro hac vice*)
tom@clarelocke.com
Megan McGuiggan (*pro hac vice*)
megan.mcguiggan@clarelocke.com
Carolyn Wesnousky (*pro hac vice*)
carrie@clarelocke.com
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7400

Stephen M. Doniger (CA Bar No. 179314)
stephen@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
(310) 590-1820

*Attorneys for Plaintiff, Tyra Banks*

By: /s/ *Jay P. Srinivasan*
JAY P. SRINIVASAN
jsrinivasan@gibsondunn.com
Ilissa Samplin
isamplin@gibsondunn.com
Zachary C. Freund
zfreund@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Connor S. Sullivan (pro hac vice forthcoming)
cssullivan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

*Attorneys for Defendants NETFLIX WORLDWIDE ENTERTAINMENT, LLC, 89 BLOCKS HOLDINGS, LLC d/b/a EVERWONDER STUDIO, NETFLIX MUSIC, LLC, MOR LOUSHY, and DANIEL SIVAN*

**ECF ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Mitchell Langberg, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 23, 2026
CLARE LOCKE LLP
By: /s/ *Mitchell Langberg*
Mitchell Langberg